UNITED STATES *v.* ROSENWASSER, DOING BUSINESS AS PERFECT GARMENT CO.

No. 106. Argued December 12, 1944.—Decided January 2, 1945.

*Mr. Ralph F. Fuchs,* with whom *Solicitor General Fahy, Messrs. Douglas B. Maggs, Joseph I. Nachman,* and *Miss Bessie Margolin* were on the brief, for the United States.

*Mr. Victor Behrstock* submitted for appellee.

Mr. Justice Murphy delivered the opinion of the Court.

This is a direct appeal from a judgment of the District Court for the Southern District of California. That court sustained appellee's demurrer to an information charging violations of the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S. C. § 201 *et seq.* This was done on the ground that the Act is inapplicable where employees are compensated at piece rates, as is the case in appellee's garment business. We are thus met with the clear issue of whether the Act covers piece rate employees so as to subject their employers to its criminal provisions.

Neither the policy of the Act nor the legislative history gives any real basis for excluding piece workers from the benefits of the statute. This legislation was designed to raise substandard wages and to give additional compensation for overtime work as to those employees within its ambit, thereby helping to protect this nation "from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health." Sen. Rep. No. 884 (75th Cong., 1st Sess.) p. 4; *United States* v. *Darby*, 312 U. S. 100. No reason is apparent why piece workers who are underpaid[1] or who work long hours do not fall within the spirit or intent of this statute, absent an explicit exception as to them. Piece rate and incentive systems were widely prevalent in the United States at the time of the passage of

---

[1] The Government points out that United States Department of Labor statistics show that 25.5% to 48.5% of the unskilled workers paid under the piece rate or incentive systems in six industries (boot and shoe, knitted outerwear, knitted underwear, seamless hosiery, full fashioned hosiery and work and knit gloves) received less than 30 cents an hour at approximately the time of the passage of the Act.

this Act[2] and we cannot assume that Congress meant to discriminate against the many workers compensated under such systems. Certainly the evils which the Act sought to eliminate permit of no distinction or discrimination based upon the method of employee compensation and none is evident from the legislative history.

The plain words of the statute give an even more unmistakable answer to the problem. Section 6 (a) of the Act provides that "every employer" shall pay to "each of his employees who is engaged in commerce or in the production of goods for commerce" not less than specified minimum "rates," which at present are "not less than 30 cents an hour." Section 7 (a) provides that "no employer" shall employ "any of his employees" for longer than specified hours in any week without paying overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed." The term "employee" is defined in § 3 (e) to include "any individual employed by an employer," with certain exceptions not here pertinent being specified in § 13, and the term "employ" is defined in § 3 (g) to include "to suffer or permit to work."

A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame.

---

[2] The Government further points out that large percentages of workers are paid on a straight piece basis in the following industries: boot and shoe, boot and shoe cut stock and findings, hosiery, knit goods, hat industries, gloves, cigar, furniture, leather and meat packing. It also states that studies made in 1935, covering a cross-section of industry including 631 manufacturing establishments employing 700,699 wage earners, indicated that 22.1% were employed at straight piece rates and an additional 21.6% on some premium or bonus system. Another study made in 1939 revealed that 61.6% of the workers in 300 companies studied were paid according to an incentive system. National Industrial Conference Board, Studies in Personnel Policy, No. 19, Some Problems in Wage Incentive Administration, p. 11, Table 4.

The use of the words "each" and "any" to modify "employee," which in turn is defined to include "any" employed individual, leaves no doubt as to the Congressional intention to include all employees within the scope of the Act unless specifically excluded.[3] And "each" and "any" employee obviously and necessarily includes one compensated by a unit of time, by the piece or by any other measurement.[4] A worker is as much an employee when paid by the piece as he is when paid by the hour. The time or mode of compensation, in other words, does not control the determination of whether one is an employee within the meaning of the Act and no court is justified in reading in an exception based upon such a factor. When combined with the criminal provisions of §§ 15 and 16, the unrestricted sweep of the term "employee" serves to inform employers with definiteness and certainty that they are criminally liable for willful violations of the Act in relation to their piece rate employees as well as to their employees compensated by other methods. See *United States* v. *Darby, supra,* 125, 126.

The fact that § 6 (a) speaks of a minimum rate of pay "an hour," while § 7 (a) refers to a "regular rate" which we have defined to mean "the hourly rate actually paid for the normal, non-overtime workweek," *Walling* v. *Helmerich*

---

[3] Sen. Rep. No. 884 (75th Cong., 1st Sess.) p. 6, states that the term " 'employee' is defined to include *all* employees. . . ." (Italics added.) Senator Black said on the floor of the Senate that the term "employee" had been given "the broadest definition that has ever been included in any one act." 81 Cong. Rec. 7657.

[4] The Act of June 26, 1940, c. 432, § 3, 54 Stat. 615, added § 6 (a) (5) to the Fair Labor Standards Act. This new section makes provision for establishing minimum piece rates by regulation or order for homework in Puerto Rico and the Virgin Islands. This is evidence of a Congressional intent to include workers of this type within the Act and a recognition that without this special provision homeworkers in Puerto Rico and the Virgin Islands paid by the piece would be subject to the ordinary statutory provisions relating to minimum wages.

*& Payne,* 323 U. S. 37, 40, does not preclude application of the Act to piece workers. Congress necessarily had to create practical and simple measuring rods to test compliance with the requirements as to minimum wages and overtime compensation. It did so by setting the standards in terms of hours and hourly rates. But other measures of work and compensation are not thereby voided or placed outside the reach of the Act. Such other modes merely must be translated or reduced by computation to an hourly basis for the sole purpose of determining whether the statutory requirements have been fulfilled. *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 579; *Walling* v. *Helmerich & Payne, supra,* 40. These hourly standards are not so phrased as reasonably to mislead employers into believing that the Act is limited to employees working on an hourly wage scale. Nor can a court rightly use these standards as a basis for cutting off the benefits of the Act from employees paid by other units of time or by the piece. If that were permissible, ready means for wholesale evasion of the Act's requirements would be provided.

It follows that the court below erred in sustaining appellee's demurrer to the information. Its judgment is

*Reversed.*

Mr. Justice Roberts dissents.