W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Plaintiff

v.

CONSTRUCTION SURVEY COOPERA-
TIVE and Geza C. Szmak,
Defendants.

Civ. No. 9006.

United States District Court
D. Connecticut.

Nov. 17, 1964.

Thomas L. Thistle, Regional Atty., U. S. Dept. of Labor, and Albert H. Ross, Boston, Mass., for plaintiff.

David E. FitzGerald, Jr., New Haven, Conn., for defendants.

ZAMPANO, District Judge.

This is an action brought by the Secretary of Labor under the Fair Labor Standards Act of 1938 as amended 29 U.S.C.A. § 201 et seq., to enjoin the defendants from violating the provisions of the Act. The Court's jurisdiction is conferred by Section 17 of the Act. 29 U.S.C.A. § 217.

The complaint alleges that defendant Construction Survey Cooperative and defendant Szmak, as Manager of the Cooperative, have violated the provisions of Sections 7 and 15(a) (2) of the Act by not paying overtime compensation to approximately seven men who work as quantity surveyors for the Cooperative; and by failing to keep certain records as required by the regulations issued by the Administrator of the Wage and Hour Division, Department of Labor, pursuant to Sections 11(c) and 15(a) (5) of the Act.

The defendants admit they have violated the overtime and record-keeping provisions of the Act but contend the Act is not applicable to them. Therefore, the only issue for determination by this Court is whether the seven quantity surveyors, all of whom are members of the defendant Cooperative, are "employees" of the defendants within the meaning of the Act. If they are found to be "employees", the defendants have violated the Act and the injunction should issue.

Evidence upon the issue was heard by the Court on November 4, 5 and 6, 1964. Five members of the Cooperative, defendant Szmak, Panettieri, Kasper, McDonald and Martini, testified as well as Richard McMullen, investigator for the Department of Labor, and Philip Pavia, a former member of the Cooperative. The parties stipulated that if the remaining members of the Cooperative, Mailloux, Ouimette and Fensky, were called to testify, they would respond to direct and cross-examination on all material facts with substantially the same answers as Panettieri, Kasper, McDonald and Martini.

The defendant Szmak is a self-made, self-styled economist and professional construction surveyor. During the throes of the depression in the early thirties, Szmak studied various social, political, and economic philosophies and organizations through which the processes of production, distribution, exchange, and consumption operate. He concluded that the evil of economic depression was caused by the private ownership of the agencies of production by a relatively small class of capitalists and the employment for wages of the large mass of workers in society. In an attempt to provide an improved standard of living for himself and a few others, he embraced the principles of the cooperative movement which, in effect, is the name used to designate those forms of economic activity in which organized groups own and operate business enterprises for the mutual benefit of their members.

At the outset, therefore, it must be noted that the economic base which supports the cooperative structure, as Szmak visualized it, was antithetical to the wage and hour system of production which the Act was designed to control. United States v. Darby, 312 U.S. 100, 109, 61 S.Ct. 451, 85 L.Ed. 609 (1941). The Cooperative's Charter of Organization states one of its aims is to "Abolish the barrier between capital, labor and management as employers and employees by placing them on par as co-investors, co-workers, co-partners, co-managers and co-owners"; and one of its purposes is to "Prevent wage and other forms of exploitation by and of labor, capital, management, development and government through over and under payment of compensation; impossible to avoid under the wage system". (Exh. A).

The modus operandi of the Construction Survey Cooperative as established by Szmak has remained substantially the same from 1933 to the present. It is an unincorporated association, a small group of people, ranging over the years from five to twenty-five persons, who render services to clients in the construction field by providing cost estimates of materials based upon an analysis of relevant blueprints, plans and specifications. At one time there were four such cooperatives, in New York, Connecticut, California and Illinois, but only two are operating presently, in New York and Connecticut.

Most of the new members join the Cooperative as trainees who complement their apprenticeship by nightschool courses in drafting and blueprint analyses. Upon joining the Cooperative they

are informed of the aims and objectives of the group, method of compensation and operation and subsequently sign a document acknowledging that they are co-workers, co-managers, co-investors and co-owners in the firm. Neither membership fee nor monetary investment is required.

The men work as a unit under the leadership and guidance of Szmak and Martini. Compensation for all members is computed on a labor merit rating system. The hourly investment rate assigned to each member depends on the prevailing market price for his various capabilities, experience and knowledge and ranges from $1.00 per hour to $3.50 per hour. There is an automatic labor investment hourly increase of $.25 per hour each six months. Labor investment ratings are subject to the approval of the entire membership and may be changed by the unanimous vote of all the members. The proportion formula used to determine compensation is based on the so-called "Golden Rule":

$$\frac{\text{Group Income} \times \text{Individual Investment}}{\text{Group Expenditures}} = \text{Individual Dividend}$$

---

In addition, some members received dividends based on materials or capital investment. No member receives a set salary; no member receives any compensation based on other than the "Golden Rule" formula.

The entire income of the Cooperative is disbursed monthly according to the above-mentioned formula. Expenses are paid first and the remaining profits are thereafter distributed. There is no capital accumulation of wealth. Each member is contractually responsible for debts and each member underwrites expenditures in ratio to their respective labor investment rating. Thus, the members share not only profits but also losses. In periods of slow business, the labor investment rating method, by vote of the entire membership, has been changed from an hourly rate to a monthly rating system based on a four-week month premise. When business prospers, the system reverts to an hourly base.

Each month a detailed typewritten account is distributed to each member, setting forth current receipts, current expenditures and a statement of dividend distribution. (Exh. B). The balance sheet is prepared monthly by an accountant and verified by an auditor. The members are paid by check which has attached to it a Certificate of Distribution detailing a monthly profit and loss report. (Exh. C).

Membership meetings are held several times a year but no recorded minutes are kept. Policy, management and operational suggestions and decisions are discussed and voted upon at these meetings. Each member has one vote and unanimous consent is necessary to carry any measure.

Qualified persons may become members of the Cooperative upon the unanimous vote of all members. No tenure of membership is required. A member may work or not, come and go as he chooses, and cannot be discharged. Withdrawal from the Cooperative is by voluntary resignation only. Any member who resigns may again become a member at his will.

In 1959, the Department of Labor conducted an investigation of the defendants under the Act, determined that there were violations but declined further action when the members refused to press any claim they may have had to overtime compensation.

In 1961, the Department of Labor again investigated the defendants under the Act, but despite the members' disclaimers, instituted this action when the defendants refused to comply.

The parties have stipulated that the defendants are engaged in a business in

interstate commerce, that the defendants have failed to keep records and failed to pay overtime compensation in accordance with the provisions of the Act. As indicated, the only issue presented to the Court is whether or not the members of the Cooperative are "employees" within the meaning of the Act.

■ Section 3(e) of the Act defines "employee" as including "any individual employed by an employer" and section 3(g) defines "employ" as including "to suffer or permit to work". The courts have consistently given a liberal and comprehensive construction to this statutory language, United States v. Rosenwasser, 323 U.S. 360, 362, 65 S.Ct. 295, 89 L.Ed. 301 (1945), and have concluded that these definitions are "comprehensive enough to require its (the Act's) application to many persons and working relationships, which prior to the Act, were not deemed to fall within an employer-employee category." Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1946). See, also Goldberg v. Whitaker House Coop., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed. 2d 100 (1960); United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1946). The Act has been described as "highly remedial" to protect workers from selling their services for less than the prescribed wage regulations. Walling v. Portland Terminal Co., 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1946); McComb v. Consolidated Fisheries Co., 75 F.Supp. 798, 800 (D.C.Del., 1948), affirmed 174 F.2d 74 (3 Cir. 1949). No traditional, mechanical application of the usual tests to determine the employment relationship will suffice; rather, the Court is required to sift the linguistic chaff of labels and scrutinize the kernel of the "economic realities" of the situation. United States v. Silk, 331 U.S. 704, 713, 67 S.Ct. 1463 (1947). Thus, protection of the Act should be given if the Court reasonably may adjudge an employment relationship.

■ Initially, it must be noted that members of a cooperative may also be employees of the cooperative within the Act. Goldberg v. Whitaker House Coop., supra; Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949). On the other hand, if the cooperative were genuinely synallagmatic, no employer-employee relationship can exist and the Act is not applicable. 29 U.S.C.A. § 206; Walling v. Portland Terminal Co., 330 U.S. 148, 152, 67 S.Ct. 639 (1946); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451 (1941).

■ Applying the facts of the instant case to the relevant legal rules and authorities, the Court finds that the Act should not be applied to the defendants. The Cooperative lacks all the indicia of an employment situation, and the Court finds no factual basis to conclude that the persons involved require the protection of the Act.

The members of the Cooperative constitute a small, closely-knit partnership of intelligent technicians, working together as a unit to improve their economic lot as a unit. It was not organized to avoid the application of the Act but existed in the same form long before the Act. The members are not regimented and conduct themselves as self-employed, independent craftsmen. They come and go as they please and work or not work at will. No corporate structure is involved and the Cooperative has no officers, officials or board of directors. All the members share the losses as well as the profits on a monthly basis. No member receives a salary; the terms of remuneration are determined by vote of the entire membership. No one may be expelled. Each member has an equal voice in management and unanimous consent is necessary on all decisions. A member may sell his services to an outside employer and yet remain a member of the Cooperative, receiving compensation on his labor investment for any work he may perform in the Cooperative. Any member may resign and thereafter join the Cooperative without restriction, or penalty.

It is true, as the plaintiff contends, that Szmak and Martini exerted some measure of leadership over the groups in New

York and Connecticut, respectively. But the Court finds this was due to their longer experience, more extensive knowledge, and driving interest rather than due to positions of control or power. What little guidance they supplied was by consent not authority.

Accordingly, the plaintiff's application for injunctive relief is denied and judgment is for the defendants.