**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Zach McGHEE, Defendant.**

**Civ. A. No. AC-1174.**

United States District Court
E: D. South Carolina,
Columbia Division.

July 21, 1965.

Charles Donahue, Sol., Beverly R. Worrell, Regional Atty., Birmingham, Ala., Anthony B. Cuviello, Atty., Office of Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Zach McGhee, in pro. per.

SIMONS, District Judge.

This is an action by the Secretary of Labor to enjoin defendant from violating the minimum wage,[1] overtime,[2] record keeping [3] and shipping [4] provisions of the Fair Labor Standards Act, as amended, [29 U.S.C. § 201 et seq.] hereinafter referred to as the Act, and to restrain defendant from withholding payment of wages allegedly due under the Act to several employees. Jurisdiction of the court is conferred by Section 17 of the Act.

In the complaint filed June 15, 1963, plaintiff alleged that defendant had been engaged in the manufacture and sale of doll clothes and doll bodies at all times pertinent to this action, and that he had employed a number of employees in his establishment or plant, and some employees in and about their homes in the manufacture and production of the said doll clothes and bodies, substantial quantities of which have been regularly shipped, delivered and sold to parties outside

---

1. 29 U.S.C. § 206.

2. 29 U.S.C. § 207.

3. 29 U.S.C. § 211(c).

4. 29 U.S.C. § 215(a) (1).

the state of South Carolina, by the defendant, or to other parties whom defendant had knowledge would thereafter deliver and sell the said products outside state of South Carolina; and that therefore the said employees were engaged in commerce and in production of goods for commerce within the meaning of the Act. Plaintiff further alleged that defendant violated the minimum wage provisions of the Act by employing the following employees [5] at rates less than $1.15 per hour, as a result of which wages have been unlawfully withheld by the defendant from these employees as follows:

| Name | Period [Weeks Ending] | Amount |
|------|-------|--------|
| Chavis | 7–17–62 through 7–18–62 | $12.65 |
| Loretta Lloyd | 4–23–62 through 6–11–62 | 36.80 |
| Virginia S. Sharpe | 6–1–62 through 8–27–62 | 27.85 |
| Morris | 7–9–62   [3½ hours] | 4.03 |

Plaintiff also alleged that defendant violated the overtime provision of the Act in that employee, Woodie B. Anderson,[6] was employed for workweeks longer than 40 hours without receiving compensation for such hours in excess of 40 per week at rates not less than one and one-half times the rate she was regularly employed; that as a result thereof unpaid overtime compensation had been unlawfully withheld by the defendant from the said Woodie B. Anderson for the period June 5, 1961 through December 31, 1962, in the approximate amount of $200.00.

In addition it is alleged in the complaint that defendant repeatedly violated the record keeping provisions of the Act in that he failed to make, keep and preserve adequate records of his employees, wages paid, hours worked and other data prescribed by applicable regulations; plaintiff asked that defendant be enjoined and restrained from committing the violations alleged; and enjoined and restrained from withholding payment of minimum wages and overtime compensation found to be due defendant's employees.

In his answer defendant admitted that during the period of time pertinent hereto he employed a number of employees in his plant; that the goods produced by said employees were shipped in interstate commerce; and that Woodie B. Anderson had been employed by him as a Floor Lady during part of the time in question. He generally denied all other material allegations of the complaint.

The case was tried in Columbia, South Carolina, without a jury during the term of court beginning March 8, 1965.

At the trial plaintiff presented Mrs. Helen Jirel Rister as a witness who testified that she had also worked as a homeworker employee for defendant during 1962. Plaintiff asserts that her testimony conclusively shows that this employee was never paid by defendant; that back wages in the amount of $12.00 is owed to her;[7] and asks that the complaint be amended to conform to the proof to include this employee as one to whom back wages are due.

Prior to the trial, defendant McGhee denied that the "homeworkers" were his "employees" within the meaning of the

5. These employees were all home workers.

6. This employee was a plant worker.

7. At the trial defendant introduced into evidence [Def. Ex. 5] a cancelled check made payable to this employee in the amount of $12.00 bearing her endorsement, her husband's and one other; employee denied she ever was paid by check. I found her testimony to be very confused and of little probative value.

Act, and that they were covered by provisions of the Act; but it was stipulated by the defendant during the trial that all of the "homeworkers" were employees within the meaning of and covered by the provisions of the Act at all times pertinent hereto, with the exception of employee Loretta Lloyd.

█ Upon a careful consideration of all the testimony and evidence presented during the trial, I find that defendant has adequately proved by means of cancelled checks that he paid wages in accordance with the minimum wage provisions of the Act to employees Mildred Morris, Mary Chavis, Virginia S. Sharpe and Helen Jirel Rister while they worked for him.[8]

Therefore the issues to be decided by the court are as follows:

1. Did defendant violate the minimum wage provisions of the Act by refusing to pay employee Loretta Lloyd for finished products which were unacceptable and never entered the stream of commerce, and are any back wages owed to this employee?

2. Did defendant violate the overtime wage provisions of the Act as to payment for hours worked by employee Woodie B. Anderson, and are any back wages owed this employee?

3. Has defendant violated the record keeping provisions of the Act as to the homeworkers and employee Woodie B. Anderson?

4. Under all of the facts and circumstances of this case should injunction issue?

### AS TO EMPLOYEE LORETTA LLOYD DAWKINS

Loretta Lloyd Dawkins was employed by defendant sometime during the period 4–23–62 through 6–11–62 in and about her home in the manufacture of doll clothes and bodies. However, her work was unsatisfactory and none of the goods she produced was ever utilized by defendant for any purpose, and never moved in interstate commerce. Defendant admits that he never paid any wages to this employee for the unacceptable work which she performed in her home. Plaintiff maintains that any goods produced with the expectation that they will be shipped or delivered outside the state of production are produced for commerce within the meaning of the Act, and any employees producing such goods are covered by the Act at all times whether or not the goods actually move in interstate commerce; citing Schulte Co. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 [1946]; Warren Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83 [1942]; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 [1941]; Bracey v. Luray, 138 F.2d 8 [4th Cir. 1943].

Loretta Lloyd Dawkins was employed to produce goods on a "piece rate" basis, as were all of the homeworkers hired by defendant McGhee, and was to be paid wages on production basis of piece work completed or $1.15 per hour, whichever was greater.

██ The Act does not preclude employer and employee from entering into a contract so long as it is not in violation of the Act; however, the Act does apply to employees compensated on a piece rate basis. United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 [1945]. Once an employee is covered by the Act, he must be paid wages commensurate with the Act for all compensable working time, and the quality of his work cannot be used as a means to defeat the purposes of the Act.[9]

█ I, therefore, find from all the evidence presented, including plaintiff's Wage and Transcription Computation Sheet,[10] that Loretta Lloyd Dawkins was

---

8. See defendant's exhibits 2–5 inclusive.

9. See Walling v. Portland Terminal Co., 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 [1947], in which Court held beginner, apprentice, or handicapped person covered under Act if in employment.

10. Pl. Exhibit P–7. Mrs. Dawkins too ill to testify at the trial.

employed by defendant for a total of 32 hours during 1962, for which she has never received any compensation. She is therefore entitled to receive from defendant the total sum of $36.80, based upon the then prevailing minimum wage rate of $1.15 per hour.

■ However, it appears to the court that defendant was not acting in bad faith in refusing to pay this one employee for piece work which was unsatisfactory and never utilized by him. Although research and study of applicable cases compel me to find that Mrs. Dawkins was covered by the Act while employed by defendant and is entitled to be paid wages for her labor regardless of the quality of her work, it is quite evident that there is a reasonable basis upon which an honest difference of opinion could exist. Under the circumstances, I do not feel that this one act of defendant, concerning one employee, would necessitate issuance of injunction against defendant to restrain possible future violations of the minimum wage provisions of the Act.

## AS TO EMPLOYEE WOODIE B. ANDERSON

Mrs. Woodie B. Anderson worked for defendant as "floor lady" in his plant during the period of June 15, 1961 through December 31, 1962.[11] Defendant admits that he failed to maintain proper records as to hours worked by Mrs. Anderson, but contends that to his knowledge she worked only 8 hours per day for five days per week, and denies that she worked in excess of 40 hours per week.

Mrs. Anderson testified that usually she came to work about 15 minutes before regular starting time to open the plant, and left in the afternoon about 15 or 20 minutes after the other workers. She also testified that during the rush season [12] she sometimes stayed in the evenings after regular quitting time [4:30] until the second shift arrived and started working, usually around 5:30 or 6:00 p. m. She further stated that she worked some Saturday mornings at defendant's plant.

Defendant admitted that during the rush season, Mrs. Anderson stayed on until the second shift reported to work, but that she never stayed for this purpose more than 15 minutes per day after normal working hours during this six weeks period. He further testified that he was lax with Mrs. Anderson, she being his floor lady; that she took time off to go to the beauty parlor during working hours every other week, took long lunch hours several times each week to meet her husband, and that she therefore more than offset any extra time worked.[13] Defendant further testified that Mrs. Anderson normally waited for her husband to drive her home in the evenings.

He further contends that her activities on occasions, in opening the plant in the mornings, turning on lights, heat, etc., were not considered part of her duties, were not required by him, that they had no understanding or agreement about the same, and that consequently such did not constitute compensable time.

■■ There is no precise rule as to what constitutes working time. It is a question of fact to be determined by the court according to common sense and general concepts of employment. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 135 F.2d 320 [5th Cir. 1943], aff'd. 321 U.S. 590, 64 S.Ct. 698,

11. Mrs. Anderson worked for defendant from 1960 until February, 1963. Statute of limitations would bar recovery of any back wages owed prior to June 15, 1961.

12. Defendant testified that night shift was only used during a six weeks period in the summer of 1962. He further testified that working hours for his employees varied with the seasons, three schedules being used, 7:00 a.m. to 3:30 p.m., 7:30 a.m. to 4:00 p.m. and 8:00 a.m. to 4:30 p.m.

13. These facts were substantially admitted on cross-examination by Mrs. Anderson although she stated she never returned to work more than a few minutes late.

83 L.Ed. 949. Furthermore, an employee has the burden of proving that he has performed work for an employer for which he has not been paid; however, the burden of proof shifts to the employer in instances were proper records are not maintained when an employee presents substantial evidence to support his claim. As stated in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 [1946]:

> "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

> "In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

I find from all of the testimony presented at the trial that plaintiff has failed to produce sufficient evidence to show the amount and extent of work in excess of forty hours per week, if any, that was performed by employee, Woodie B. Anderson, while she was employed by the defendant. Defendant has adequately shown that any extra time worked by Mrs. Anderson in the evenings was offset by time off given her during working hours to visit the beauty parlor and to have long lunch periods with her husband. I further find that Mrs. Anderson's testimony relating to working a few Saturday mornings was too vague and uncertain to give rise to any reasonable inference as to the amount of time she might have worked on these days. I further find that there is no evidence or testimony to show that Mrs. Anderson's activities in coming to work early and opening defendant's plant in the mornings was required by her employer or considered part of her normal duties. She did not begin working at her usual job duties prior to regular starting time.

I conclude, therefore, that any time spent by this employee in arriving early at defendant's plant and opening the doors, turning on lights and heat, was not compensable time.

I conclude in accordance with the above findings that defendant did not violate the overtime provisions of the Act as to employee Woodie B. Anderson.

### AS TO VIOLATIONS OF RECORD KEEPING PROVISIONS OF THE ACT

Defendant testified at the trial that he had maintained proper records on all of his homeworkers, apparently a total of seven, but that he had lost all of them sometime during September 1962, while moving the location of his offices.[14] Plaintiff's investigation of one of defendant's plant workers, employee Woodie

---

14. See also defendant's answer to interrogatories filed Jan. 4, 1965.

B. Anderson, revealed, and defendant admits, that he did not keep proper records as to the number of hours worked by this employee. It was also clearly shown at the trial that defendant violated Regulation 516.24 [29 C.F.R. 516.24] [15] by not acquiring from the Department of Labor and giving to each of his homeworkers a "homework handbook". Defendant contended at the trial that he had given each homeworker a form [16] which sufficed for the homework handbook required by the regulation. However, I find that this form is inadequate in that it fails to contain pertinent data required by the regulation, including piece rate paid, and name and address of the employee; and, furthermore, it was shown at the trial that none of the homeworkers had ever received or seen defendant's purported handbook.

■ Having determined that defendant did not violate the overtime provisions of the Act and that plaintiff has shown only that defendant owes back wages to one employee in accordance with the minimum wage provisions of the Act, about which there was a bona fide dispute, I conclude that there has not been an adequate showing before this court to warrant the issuance of an injunction against the defendant as to overtime provisions, minimum wage provisions or shipping provisions of the Act.

Therefore, the final question is whether under all of the facts of this case the defendant should be enjoined and restrained from committing further violations of the record keeping provisions of the Act; and from further withholding unpaid back wages due employee Loretta Lloyd Dawkins. In considering this question the court is faced with the admission by the defendant at the trial that he holds himself out as an "expert" in Fair Labor Standards Act matters, and has given advice to other business men concerning the aims and requirements of the Act.

Defendant maintains that he no longer has any homeworker employees and will not employ any in the future. He further asserts that plaintiff found only the discrepancy in his record keeping as to employee Woodie B. Anderson among all of his plant workers whose number varied from time to time from 10 to 30; [17] and that therefore injunctive relief is not indicated.

■ An injunction is a drastic remedy, not to be invoked as a punitive measure, but only to insure compliance with the Act. Walling v. Clinchfield Coal Corporation, 159 F.2d 395 [4th Cir. 1946].

■ To invoke this remedy the moving party must make a strong showing of some cognizable danger of recurrent violation; and to be considered by the court are good faith on the part of a defendant to comply in the future, character of past violations, and effectiveness

---

15. 29 C.F.R. 516.24 [c] provides: "In addition to the information and data required in paragraph [b] of this section, a separate handbook [to be obtained by the employer from the Wage and Hour Division and supplied by him to each worker] shall be kept for each homeworker. The information required therein shall be entered by the employer or the person distributing or collecting homework on behalf of such employer each time work is given out to or received from a homeworker. Except for the time necessary for the making of entries by the employer, the handbook must remain in the possession of the homeworker until such time as the Wage and Hour Division may request it. Upon completion of the handbook [that is, no space remains for additional entries] or termination of the homeworker's services, the handbook shall be returned to the employer for preservation in accordance with the regulations in this part. A separate record and a separate handbook shall be kept for each person performing home work."

16. Defendant's Ex. D–1.

17. Plaintiff's wage and hour investigator testified at trial that defendant did not make his plant records or his plant workers readily available to the department investigators and, therefore, only limited access to the plant workers was effected and a thorough investigation could not be made of the plant activities.

of the discontinuance of any violations. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 [1953].

I must find from all the testimony and evidence presented to the court that defendant has exhibited throughout plaintiff's investigations and these proceedings a non-cooperative attitude. He, an "expert" in matters involving the Fair Labor Standards Act, has admitted violating the record keeping provisions of the Act, and has substantially thwarted plaintiff's efforts to make a thorough investigation of his records and his employees. Under the circumstances I cannot with complete confidence say that defendant will not violate the record keeping provisions of the Act in the future.[18]

It is therefore ordered that defendant, his agents and servants, and all persons acting in his behalf, are permanently enjoined and restrained from violating the provisions of Sections 11(c) and 15(a)(5) of the Fair Labor Standards Act, as amended, by failing to make, keep and preserve adequate and accurate records of his employees, and the wages, hours and other conditions and practices of employment maintained by him, as prescribed by existing regulations of the Administrator issued pursuant to Section 11(c) of the Act, and from time to time amended and found in 29 CFR 516.

It is further ordered that within 20 days from date of this order, defendant shall make payment to plaintiff or his representative the total amount of $36.80 to be paid thereafter by plaintiff or his representative to Mrs. Loretta Lloyd Dawkins.

Let judgment be entered accordingly.

18. In his argument against issuance of injunction defendant here cites case of Thomas, et al. v. Orangeburg Theaters, D.C., 241 F.Supp. 317 [1965], in which this court refused injunction on grounds that Orangeburg Theaters, Inc., had ceased operation of its theaters on a racially segregated basis and it appeared that there would be no future violation of plaintiffs' rights. In the Orangeburg case

plaintiffs' complaint was filed July 30, 1964, and practices complained of were voluntarily eliminated by defendant during ensuing month of August, 1964. In the instant case defendant has not acted in such a manner as to convince this court that he will hereafter voluntarily comply with the Act. The background and circumstances of the two cases are entirely different.