Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

TASTEE FREEZ (PUERTO RICO), INC., a corporation and Antonio B. Toro, individually and as president of Tastee Freez (Puerto Rico), Inc., Defendants.

Civ. No. 79–2742.

United States District Court, D. Puerto Rico.

Aug. 19, 1981.

Stephen Alan Clark, U. S. Dept. of Labor, Hato Rey, P. R., for plaintiff.

Benjamin Rodríguez-Ramón, Rodríguez-Ramón, Peña & Cancia, Hato Rey, P. R., for defendant Tastee Freez.

James A. Toro, San Juan, P. R., for defendant Antonio B. Toro.

OPINION AND ORDER

CEREZO, District Judge.

This complaint was originally filed on November 29, 1979 by the Secretary of Labor of the United States and amended by permission granted on November 10, 1980 to enjoin defendants Tastee Freez (Puerto Rico), Inc., its President Antonio B. Toro and various other corporate defendants which were allegedly merged forming T.F.I. Companies (Puerto Rico), Inc., their successor in interest, from violating the pertinent provisions of the Fair Labor Standards Act of 1938, as amended, 29 United States Code

Section 201 et seq., including the restraint of any withholding of payment of minimum wages and overtime compensation found to be due to the employees of defendant under the Act. Specifically, it is alleged that since January 1, 1977 defendants have violated Sections 7(a)(2) and 15(a)(2) of the Act by employing many of the restaurant employees in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer than forty-six hours without compensating each such employee for his employment in excess of forty-six hours a week at a rate of not less than one and one and a half times the regular rate at which he was employed between January 1, 1977 and December 31, 1977; by employing such persons for workweeks longer than forty-four hours without compensating each one for his employment in excess of forty-four hours a week at a rate not less than one and one and a half times the regular rate at which he was employed between January 1, 1978 and December 31, 1978 and subsequently to January 1, 1979 for workweeks longer than forty hours without compensating each such employee for his work in excess of forty hours a week at a rate not less than one and one and a half times at the regular rate at which he had been employed. It is further alleged that since on or about January 1, 1979 defendants have repeatedly violated the provisions of the Act that require making and preserving adequate and accurate records by failing to show in the records kept by them the names of their employees, the hours worked each workday, the total hours worked each workweek and the wages paid.

Defendants have answered the complaint. Tastee Freez (Puerto Rico), Inc. affirmatively alleges that it is the owner of several ice cream and fast food store properties in Puerto Rico that do business under the names "Tastee Freez" or "Carrols" and that it does not operate any of these stores but rather leases each of them to independent contractors pursuant to a Going Concern Business Lease Agreement, expressly excluded from the Fair Labor Standards Act. It is contended in the answer to the com-

plaint that a number of factors in the relationship between defendant and each independent contractor ensures that the latter maintains independent control over the operation of his store and that defendant is under no obligation to pay minimum wages or overtime compensation to the employees of the independent contractors with whom it deals nor to maintain any records relative thereto, obligations which it alleges are incumbent only upon said contractors.

On December 29, 1980 codefendant Tastee Freez (Puerto Rico), Inc. filed a motion for summary judgment accompanied by a statement of material facts not in controversy, a copy of the standardized Going Concern Business Lease Agreement by virtue of which it leases each of its stores, a memorandum of law in support thereof and copy of a stipulation of dismissal entered in Civil No. 78–1290, *Tastee Freez (Puerto Rico), Inc. v. United States of America*, an informative motion filed in that case on September 25, 1979, a letter dated June 27, 1979 sent to counsel for Tastee Freez (Puerto Rico), Inc. by the Tax Division of the Department of Justice relative to an administrative settlement reached in Civil No. 78–1290 which resulted in the stipulation of dismissal and a copy of an opinion of the Supreme Court of Puerto Rico in a case between Tastee Freez de Puerto Rico, Inc., the Bureau of Employment Security and the Secretary of Labor of Puerto Rico. It is movant's primary contention that in these two civil actions the threshold issue present in this case was resolved upon determining that no employment relationship existed between Tastee Freez (Puerto Rico), Inc. and its former lessees and employees. It considers this case an attempt by the United States to again attack it on an issue already fully litigated and decided in its favor and argues that the doctrines of res judicata and collateral estoppel preclude this action. Plaintiff has opposed the motion for summary judgment contending that the issue in the present case is whether the Fair Labor Standards Act of 1938, as amended, applies to defendant's operations and that neither the case brought by Tastee

Freez (Puerto Rico), Inc. against the United States, Civil No. 78–1290, nor the case decided by the Supreme Court of Puerto Rico adjudicated the primary and dispositive issue of whether the workers for whom protection is sought by the Secretary of Labor are defendant's employees within the meaning of the Fair Labor Standards Act.

Resolution of the underlying issue in this case—whether the workers on whose behalf this action is brought are actually employees of Tastee Freez covered by the provisions of the Fair Labor Standards Act or independent contractors—requires an evaluation of the entire fact situation in the light of the particular statutory framework involved. Tastee Freez is in effect contending that the relationship between it and such persons under the Act has for all practical purposes been determined in the two prior suits and need not be adjudicated anew.

One of these two actions is a tax refund claim filed on July 12, 1978 by Tastee Freez (Puerto Rico), Inc. against the United States alleging that defendant had erroneously and wrongfully collected federal income contribution taxes and federal unemployment taxes on the employees of merchants or independent contractors to whom it leases its several stores and that, since the merchants were not its employees within the meaning of the Federal Insurance Contributions Act (FICA), 26 United States Code Section 3121(d), nor within the meaning of the Federal Unemployment Tax Act (FUTA), 26 United States Code Section 3306(i), it had no tax liability. On September 25, 1979 Tastee Freez (Puerto Rico), Inc. filed an informative motion in that case in which it stated that defendant had agreed to an administrative settlement pursuant to the terms of a letter dated June 27, 1979 addressed to its counsel by Ms. Mildred L.

Seidman, Chief, Review Section of the United States Department of Justice. Thereafter a Stipulation of Dismissal was filed by both parties agreeing that Civil Action No. 78–1290 be dismissed, with prejudice, each party to bear its own costs. The pertinent part of the June 27, 1979 letter states that the administrative settlement that had been approved in that case was based on Section 530 of the Revenue Act of 1978 which deals with controversies involving whether individuals are employees for purposes of the employment taxes. The other civil action which Tastee Freez (Puerto Rico), Inc. contends bars this suit is one filed by it against the Bureau of Employment Security and the Secretary of Labor of Puerto Rico before the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, which was reviewed by the Supreme Court of Puerto Rico and decided on February 28, 1979.[1] The Department of Labor of Puerto Rico there determined that as of January 1, 1974 the lessees of Tastee Freez' stores and their employees would be considered employees of Tastee Freez (Puerto Rico), Inc. covered by the unemployment[2] and disability insurance laws[3] of the Commonwealth of Puerto Rico.[4] This administrative decision was affirmed by the Superior Court and reversed, on certiorari, by the Supreme Court of Puerto Rico. The Court analyzed the lease contract to determine the degree of contractual control present in the relationship between Tastee Freez (Puerto Rico), Inc. as lessor and its lessees and decided that their relation was that of lessees-franchisees, that "the employees of the lessees-franchisees of Tastee Freez and the lessees-franchisees themselves are not employees of said firm" and that "the employees of the lessees-franchisees are employees of the latter."[5] A reading of the Puerto Rico Supreme Court

1. At the moment of the April 3, 1981 hearing that decision was under reconsideration by the Supreme Court of Puerto Rico.

2. Employment Security Act of June 21, 1956, 29 LPRA Section 701 et seq.

3. Disability Benefits Act of June 26, 1978, 11 LPRA Section 201 et seq.

4. Page 4 of defendant's memorandum.

5. Puerto Rico Supreme Court decision of February 28, 1979 in *Tastee Freez de Puerto Rico, Inc. v. Bureau of Employment Security and Secretary of Labor of Puerto Rico*, 0–78–205, at page 12.

opinion reveals that it is based almost exclusively on its analysis of the written lease contracts without going beyond its clauses and into other factors of that relationship.

In its discussion of the Puerto Rico Labor Department suit before the Supreme Court of Puerto Rico defendant states that "the relevant criteria is determining whether a true employment relationship exists under Puerto Rican law as set forth in Act number 74, approved June 26, 1968, 11 LPRA 201–212." [6] Defendant concedes in its memorandum that the statutory definition of employment under Puerto Rican law differs from the customary common-law principles used to ascertain the existence of an employer-employee relationship, yet argues that the local statutory definition is significantly broader than the test premised on the common-law principles utilized by the U.S. Labor Department. Defendant first strikes a note of similarity between the common-law test of control and the definition of employee under the Fair Labor Standards Act, then argues that the criterion used by the Supreme Court of Puerto Rico in determining whether an employer-employee relationship existed in the case before it is much broader than the unified control criterion of the Fair Labor Standards Act. The case law has established, however, that the definitions of employee and employer in the Fair Labor Standards Act are not to be construed by using the common-law principles or the common-law test of control. Furthermore, defendant's argument that the statutory definitions under the Commonwealth's law of employment are broader than those under the Fair Labor Standards Act is questionable. Referring to the term "employee" as defined in Section 3(e) of the Fair Labor Standards Act, 29 United States Code Section 203(e) as "any individual employed by an employer," the Supreme Court in *United States v. Rosenwasser*, 323 U.S. 360, 362–363, 65 S.Ct. 295, 296, 89 L.Ed. 301 (1954) pointed out that "[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame" and that "[t]he use of the words 'each' and 'any' to modify 'employee,' which in turn is defined to include 'any' employed individual, leaves no doubt as to the Congressional intent to include all employees within the scope of the Act unless specifically excluded." In contrast with the broad coverage established in the definition of employee by the Fair Labor Standards Act, the local statute construed in the case decided by the Supreme Court of Puerto Rico defines "employment" as service performed by an individual irrespective of whether a management labor relationship exists unless it is shown to the satisfaction of the Secretary that:

"(A) Such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service, and in fact; and

(B) Such service is performed either outside the usual course of the business for which the service is performed or outside of all the places of business of the enterprise for which the service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed."

Defendant urges that this Court be persuaded by the decision of the Supreme Court of Puerto Rico under the Puerto Rican statute even though plaintiff was not a party nor was it in privity with other litigants in that action and even though it recognizes that the applicable statutory standards are different. Defendant's debatable assertion that the Puerto Rican standard is broader and more comprehensive than the Fair Labor Standards Act definitions of an employee-employer relationship is a mere conclusory statement conveniently disguised as statutory construction.

---

**6.** Page 9 of the memorandum in support of motion for summary judgment filed on December 29, 1980.

In the other part of its dual attack on the legitimacy of the present action defendant contends that the consequence of the dismissal of the tax refund case filed in this Court and based on Section 530 of the Revenue Act of 1978 was that "obviously, the Justice Department and the Internal Revenue Service decided to settle the tax refund case only after they determined that the individuals in question were not actual employees of Tastee Freez." [7] Plaintiff contends that the tax case in which Tastee Freez (Puerto Rico), Inc. sought refund of FICA and FUTA taxes imposed on it as employer of its lessees was settled under a special exemption granted by Congress which dealt with special circumstances not related to the circumstances of this case and that there were three different bases for granting such exemption, none of which were mentioned in the tax case upon stipulation and judgment.

Section 530 of the Revenue Act of 1978, P.L. 95–600, dealing with determination of certain employment tax liability for periods before 1980 is a curative piece of legislation of a remedial nature based on a standard of good faith reliance intended to provide interim relief for taxpayers involved in employment tax status controversies with the Internal Revenue Service until Congress had adequate time to resolve the complex issues involved in that area, which was to remain in effect until the enactment by Congress of legislation terminating its provisions prospectively. It deals specifically with the employment tax laws. Its legislative history reveals that the determination of an employer-employee relationship for purposes of federal employment taxes is made under common-law rules and that generally the basis for determining whether a particular worker is an employee or an independent contractor for such purposes is the common-law test of control. In the late 1960s the Internal Revenue Service decided to increase its enforcement of the employment tax laws. Before that, employment tax audits had been superficial and sporadic, entailing examination of employment status issues only occasionally. Controversies developed between the Internal Revenue Service and taxpayers on whether individuals treated as independent contractors should be reclassified as employees. These reclassifications brought complaints because many taxpayers believed that this involved a change of position by the Internal Revenue Service in interpreting how the common-law rules applied to their workers or industry. Some taxpayers relied on prior private letter rulings or public revenue rulings in which the Internal Revenue Service expressed that the workers were independent contractors, while others relied on their own judgment on industry practice.[8] As stated in the legislative history of the provision of the Revenue Act of 1978 granting temporary termination of liability for federal employment taxes such as FICA and FUTA:

> "During the 1976 Tax Reform Act Conference, House and Senate conferees included in the Statement of Managers a request that the IRS 'not apply any changed position or any newly stated position in this general subject area to past, as opposed to future taxable years' until the completion of a study by the staff of the Joint Committee on Taxation on the problems of classifying persons as employees or independent contractors.
>
> The committee believes that it is appropriate to provide interim relief for taxpayers who are involved in employment tax status controversies with the Internal Revenue Service, and who potentially face large assessments, as a result of the Service's proposed reclassifications of workers, until the Congress has adequate time to resolve the many complex issues involved in this area." [9]

7. Page 6 of defendant's memorandum dated December 29, 1980.

8. See 6 United States Code Congressional and Administrative News 1978, pages 6761, 6972–6974.

9. Ibid, at 2973.

Thus the bill prevented the Internal Revenue Service from making reclassifications of certain individuals as employees for purposes of federal employment taxes upon four statutory bases for reasonable reliance which were: (1) past Internal Revenue Service audit practice with respect to the taxpayer; (2) public rulings or judicial precedent; (3) recognized practice in the industry of which the taxpayer is a member; or (4) long standing treatment by the taxpayer of such individual or class of individuals for employment tax purposes.[10]

As stated before, this is a tax provision affecting employment tax liabilities of a remedial character which responded to peculiar circumstances of past deficiencies in the enforcement by that agency of the employment tax laws.

Beyond this, however, lies the fact that the determination of an employee-employer relationship for purposes of the imposition of federal employment taxes such as FUTA and FICA is based on the common-law test of control. The particular issue in the case before us is the determination of an employee-employer relationship within the meaning of the Fair Labor Standards Act. The ultimate factual determination in this case will be whether the persons on whose behalf this action has been brought are in effect employees of defendants within the meaning of that Act. Defendant contends that although the common-law principles are not the exclusive determinants on whether an individual is an employee under the Fair Labor Standards Act, those factors, nevertheless, are the most important ones to be considered in such a determination. Citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1946) it further contends that the Supreme Court of the United States has stated that decisions defining the coverage of the employer-employee relationship under the National Labor Relations and Social Security Acts are persuasive in consideration of a similar coverage under the Fair Labor Standards Act. Persuasive, however, is not the equivalent of controlling or deter-

minant. To be sure, the Supreme Court has stated that the Fair Labor Standards Act of 1938 is a part of the social legislation of the same general character as the National Labor Relations Act and the Social Security Act and that decisions on coverage under the latter are persuasive on determining coverage under the former. 331 U.S., at 723, 67 S.Ct., at 1473.

Defendant disregards, however, that the Court has expressed that "in determining who are 'employees' under the Act, common-law employee categories or employer-employee classifications under other statutes are not of controlling significance." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–151, 67 S.Ct. 639, 640, 91 L.Ed. 809 (1947). In the same opinion, the Court pointed out that "[t]his Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not determined to fall within the employer-employee category." Ibid. The guideline that decisions rendered under other statutory definitions are persuasive but not controlling in a determination of who is an employee under the Fair Labor Standards Act definition responds to the reality that although this social legislation seeks the general well being of the workers and the improvement of social conditions, each has its own defined scope and conception of what an employee and an employer is. Defendant would have us believe that a determination for federal employment taxes of what an employee is precludes all further inquiry of such a determination under FLSA standards, and thus, that plaintiff is collaterally estopped from bringing this action. To adopt this view is to accept one definition of employee and to resort to an all inclusive standard applicable to all imaginable situations. Such consideration has been rejected. As stated in *N.L.R.B. (Board) v. Hearst Publications*, 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1943), "[t]he word [employee] 'is not treated by Congress as a word of art having a definite meaning ...' Rather 'it takes color from

10. Ibid.

its surroundings ... [in] the statute where it appears ...' and derives meaning from the context of that statute, which 'must be read in the light of the mischief to be corrected and the end to be attained.'" (Citations omitted.) Referring to the National Labor Relations Act, it was further expressed therein that the applicability of the statute "is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications." 322 U.S. at 129, 64 S.Ct. at 859.

This is not a case where the Government seeks to relitigate already decided issues. The definitions of employee and employer under FICA and FUTA are based on common-law tests, *United States v. Webb, Inc.,* 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970), which are not controlling and do not restrict the definitions and the coverage issues under the FLSA. *Real v. Driscoll Associates, Inc.,* 603 F.2d 748, 754 (9th Cir. 1979). Furthermore, as stated in *Board v. Hearst Publications,* 322 U.S. at 123, 64 S.Ct. at 857, "the assumed simplicity and uniformity, resulting from application of 'common-law standards,' does not exist." In sum, the most that can be ascertained is that determinations in other lawsuits involving employer-employee relationships under other statutes and standards are merely persuasive and, as such, are a far cry from defendant's position that such prior determinations preclude and terminate this lawsuit.

Accordingly, the motion for summary judgment filed by Tastee Freez (Puerto Rico), Inc. on December 29, 1980 is HEREBY DENIED.

SO ORDERED.