**James KEELER, Plaintiff,**

**v.**

**Ray A. PEA, Supervior of the Dutchman Correctional Institution, Defendant.**

**Civ. A. No. 7:90–127–20H.**

United States District Court,
D. South Carolina,
Spartanburg Division.

Jan. 9, 1992.

James Keeler, pro se.

Barbara Bowens, Staff Atty., South Carolina Dept. of Corrections, for defendant.

## ORDER

HERLONG, District Judge.

The plaintiff, James Keeler ("Keeler"), brought suit under 42 U.S.C. § 1983, alleging that the defendant, Ray A. Pea ("Pea"), violated his constitutional rights when Pea charged Keeler with an institutional violation, possession of or attempting to obtain contraband. Keeler alleges that Pea maliciously accused him of this false charge and searched him and his cell. Although Pea did not find any contraband, he placed Keeler on "lock-up." Pea also searched Roy Davis ("Davis"), an inmate to whom Keeler supposedly passed something during the search. Although nothing was found during the search of either inmate or their cells, a green, leafy substance was found in an envelope near Davis' cell. Keeler claims that although nothing connected the envelope to him, Pea placed him on "lock-up" for several days pending resolution of these charges. Keeler further claims he was subjected to cruel and unusual punishment and severe emotional distress, because he (and his aged mother) were afraid that he would be charged with a drug violation under state law.

Pea filed an answer and motion for summary judgment on April 20, 1990, alleging that Keeler had not been deprived of his constitutional rights. Keeler filed a timely response opposing Pea's motion for summary judgment. Following review of the file, a report and recommendation was filed by the Honorable Charles W. Gambrell, United States Magistrate Judge, in which he recommended granting summary judgment to Pea on any one of several bases. Keeler then filed objections to the report and recommendation.

28 U.S.C. § 636(b)(1) provides in part: "Within ten days after being served with a copy [of a magistrate judge's recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination *of those portions of the report ... to which objection is made."* (Emphasis added.)

■ The clear language of this section reveals that the court is required to review only those matters to which an objection is made or, if no objections are filed, the court may simply adopt the magistrate judge's report and recommendation. *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983). A litigant may forfeit the right to *de novo* review if he fails to file timely objections, if the objections are to strictly legal issues and no factual issues are challenged, or if the objections are general or conclusory and do not relate to a specific error in the report and recommendation. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). "The statute [28 U.S.C. § 636(b)(1)(C) ] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S.

140, 149, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

The rationale for requiring proper objections is to shift some of the court's workload from the district court judges to the magistrate judges. A litigant who objects only in vague or general terms to the magistrate judge's recommendation forces the district court judge to review the entire case fully, frustrating the purposes of the Federal Magistrates Act, 28 U.S.C. § 636, as amended in 1976.

■ In his objections to the report and recommendation of the magistrate judge, Keeler addressed three areas of disagreement. First, Keeler argues that Pea violated a liberty interest that he had to remain in the general population of the prison, a liberty interest established by rules and policies of the South Carolina Department of Corrections ("SCDC"). As part of this argument, Keeler also avers that he should have been taken before a SCDC supervisory official for a determination of whether he was a security risk before being placed in "lock-up." Plaintiff completely misunderstands the scope of § 1983. This statute guarantees a person's *constitutional* rights against violation by state actors. It does not provide any relief against prison rules violations assuming, *arguendo*, that such a violation occurred.

■ Further, Keeler does not support his contention that such a liberty interest is created by SCDC policies. He should be reminded that, having been convicted of a crime by the courts of South Carolina, he is *lawfully* confined in prison and may be subjected to the usual conditions and disadvantages of that confinement. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The use of administrative segregation, or "lock-up," is an acceptable form of confinement or discipline, within the discretion of prison officials, absent "explicitly mandatory language" in the state law which limits the discretion of the prison officials or prohibits the use of administrative segregation. *See Berrier v. Allen*, 951 F.2d 622, 625 (4th Cir. Dec. 13, 1991). An inmate has no liberty interest in remaining in the general prison population because administrative segregation is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a violation of due process. The Court in *Hewitt* also noted that a liberty interest generally arises from either the Due Process Clause or from state law. *Id.* at 466. The plaintiff here provides no authority that state law, as opposed to SCDC regulations, establishes a liberty interest. Finding none under either state law or the Due Process Clause, Keeler is not entitled to relief.

■ Keeler's second area of disagreement with the magistrate judge is his contention that because he was found not guilty by the Inmate Advisory Council, Pea made a false charge against the plaintiff. Such a conclusion does not necessarily follow. As pointed out by the magistrate judge, just as a verdict of "not guilty" does not necessarily guarantee that a cause of action for malicious prosecution or false arrest will follow in the non-prison setting. The consideration for any court is whether the "arresting officer" had probable cause to act, given the information available at the time he filed charges against the plaintiff. The magistrate judge outlined the facts known to Pea at the time he wrote up the charges against Keeler. Keeler has not contradicted those facts.

Keeler also argues that Pea's use of the word "appeared" in his incident report underscores Pea's uncertainty about the charges. That contention is frivolous. Pea's incident report clearly indicates that he saw something passed between Keeler and Davis which appeared to be contraband. Although a search of the two men revealed nothing, contraband was found near where the two men had been standing when observed by Pea. As Keeler correctly points out, he is entitled to a minimal standard of due process in the prison disciplinary setting:

1.  Advanced written notice of the charges;

2.  A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3.  The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

*Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974).

A very similar situation to the one addressed here occurred in the case of *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In that case, only circumstantial evidence existed to charge three inmates who were witnessed running away from a fourth inmate, who had been assaulted. Although the lower courts believed that corrections officials had not met their burden of proof to charge the inmates with violation of prison regulations, the Supreme Court did not agree. The Court found that, in the institutional setting, the fact finders only had to show that *some* evidence existed in order to support their conclusion. *Id.* at 455, 105 S.Ct. at 2773.

In the instant case, "some" evidence clearly existed on which the disciplinary committee could have reached findings of guilty as to all charges. As the magistrate judge noted, sufficient evidence existed on which a finding of guilt could have been based. Keeler, therefore, cannot complain of charges being improperly brought simply because he was not found guilty by the Council.

■ Keeler's third area of disagreement is with the magistrate judge's conclusion that Pea is entitled to qualified immunity. On this point, however, Keeler is objecting to a legal conclusion. He argues that because the doctrine of sovereign immunity was abolished, Pea is not immune. Pea's immunity, however, is based on the Eleventh Amendment and principles of common law, which provide a valid qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Although Keeler filed objections to the magistrate judge's report and recommendation, his arguments fail to convince the court that the magistrate judge's conclusions were incorrect. It is therefore

ORDERED that the defendant's motion for summary judgment be granted and judgment be entered for the defendant.