**HOWARD'S YELLOW CABS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 5:93CV90–V.**

United States District Court,
W.D. North Carolina,
Stateville Division.

May 19, 1997.

T. Scott Tufts, Brian F.D. Lavelle, Roy W. Davis, Jr., Van Winkle, Buck, Wall, Starnes, & Davis, P.A., Asheville, NC, for Plaintiff.

Thomas Holderness, Michael J. Martineau, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

RICHARD L. VOORHEES, Chief Judge.

**THIS MATTER** is before the Court for ruling upon proposed findings of fact and recommendations for disposition of certain motions as submitted by Chief Magistrate Judge Carl Horn. Pursuant to 28 U.S.C. § 636 and the standing order of designation, this Court had referred Defendant's Motion For Partial Summary Judgment, filed July 29, 1994 (doc. # 19), and Plaintiff's Motion For Summary Judgment, filed August 29, 1994 (doc. # 28) to Chief Magistrate Judge Horn for recommended disposition. On October 12, 1994, Chief Magistrate Judge Horn recommended; 1) that Defendant's Motion For Partial Summary Judgment be **DENIED;** 2) that Plaintiff's Motion For Summary Judgment be **GRANTED;** 3) that the $17,815.36 in assessments which Plaintiff paid to the IRS under protest be refunded, together with interest as provided by law; 4) that Defendant be enjoined from enforcing collection of the amounts it assessed as stated in its "Notice[s] Of Intent To Levy ...." dated September 8, 1993; and 5) that Plaintiff be awarded reasonable attorney's fees and costs in an amount to be determined (doc. # 35).

Defendant filed objections to the recommendation, Plaintiff responded in opposition, and Defendant replied (docs.# 36, 37, 38, respectively). Thereafter, Plaintiff moved for leave to file a supplemental brief in support of its Motion for Summary Judgment and the Magistrate's Recommendation, which was granted over Defendant's objection (docs.# 40, 41, 42, 43). Defendant responded in opposition to Plaintiff's supplemental authorities, Plaintiff moved to strike, and Defendant responded (docs.# 44, 45, 46, 47). After consideration of the record, briefs of the parties, and relevant case authority, and for the reasons stated below, the Court affirms in part and denies in part the recommendation.

### FACTUAL BACKGROUND[1]

Plaintiff Howard's Yellow Cabs, Inc., (President Howard Sumlin) operates a cab service in Lenoir, North Carolina, and surrounding communities. This service is the only public transportation in the area. Plaintiff and the drivers operate pursuant to a written agreement entitled "Acknowledgement of Independent Contractor Agreement," which states that the parties have a "50/50 fares" arrangement; that the driver is an independent contractor, and not an em-

---

1. These facts are taken from Plaintiff's motion for summary judgment, and are for the most part, unopposed by Defendant. Defendant's op- position is to the application of the law to these facts, and the conclusions to be drawn from that application.

ployee, partner, agent, or joint venturer with Plaintiff; that Plaintiff does not deduct withholding taxes, FICA, or any other taxes required to be deducted by an employer and that the driver is responsible for payment of such taxes; and that the driver is not entitled to any fringe benefits, retirement, pension, profit sharing, or any other benefits which might accrue to an employee (doc. # 29, Ex. 1).

Plaintiff provided to the drivers a cab, radio, dispatcher services, and maintenance on the cabs, and one half of the fuel. Drivers were provided keys to the depot and had access to the cab keys. Drivers were financially liable for any damage to the cabs caused by their own negligence. Plaintiff and drivers equally split any loss which was sustained due to robbery or "run out" passengers. Drivers did not work any set shift or hours and had personal use of the cabs during the day.

Plaintiff and the drivers derived income from two sources. The drivers picked up public fares, with or without the assistance of the dispatcher. The cabs did not have meters, and the drivers were not required to keep a written log of their fares. The drivers collected the cash fares and their tips from the public. Additionally, drivers would transport special needs individuals pursuant to contract fare agreements which had been entered into by Plaintiff and third parties. At the time the transportation was provided, Plaintiff would credit the driver with 50% of the contract fare amount. Plaintiff was paid directly for the contract fares by the third parties on a monthly basis. In sum, the driver was responsible for collecting and disbursing the cash fares, while Plaintiff was responsible for collecting and disbursing the contract fares.

Plaintiff's dispatcher and the drivers would "settle up" approximately weekly. A driver would retain all of the cash which he had collected from the public fares, and this amount was reported to the dispatcher. The dispatcher reported to the driver the amount of contract fares to which the driver was

entitled.[2] Fifty percent of the fuel cost was subtracted from the drivers' share, as was the cost of any damage to the cab. The driver and dispatcher then determined the amount of money which the driver owed to the Plaintiff (in the event that the cash fares due to Plaintiff exceeded the contract fares), or which Plaintiff owed to the driver (in the event that the contract fares due to the driver exceeded the cash fares which had been collected). Drivers kept the entirety of their tips from both the cash fares and the contract fares.

On June 7, 1993, the Internal Revenue Service ("IRS") assessed Plaintiff with $57,-080.50 in FICA and withholding taxes for 1988, $59,385.32 for 1989, and $34,668.53 for 1990; and with $12,360.91 in FUTA taxes for 1988, $11,915.12 for 1989, and $6,404.64 for 1990. These assessments were based upon the IRS's conclusion that the taxicab drivers with whom Plaintiff had contracted were "employees" rather than "independent contractors", and that Plaintiff had failed to pay the applicable employment taxes for the years in question.

On July 13, 1993, Plaintiff paid to the IRS, under protest, the sum of $11,405.30, representing the amount of FICA and withholding taxes allegedly owed for one driver during the period in question; it paid $1,309.91 in FUTA taxes for one driver under the same circumstances; and paid an additional $100.00, representing a divisible portion of the interest and penalties with which it had been assessed. Along with its July 1993 payments, Plaintiff submitted twelve "Claim[s] For Refund" (for the quarters covered by the assessment), seeking to recover its $11,405.30 protest payment, and twelve "Claim[s] For Abatement," seeking relief from the balance of the aforedescribed assessments. While going through the IRS's administrative appeals process, on December 10, 1991, Plaintiff paid the IRS $5,000 toward the subject assessments.

By letters, all dated August 13, 1993, the IRS notified Plaintiff that its Claims For Refunds and Claims For Abatement were

2. Although Plaintiff was only paid for the contract fares on a monthly basis, the drivers were paid their 50% share on a weekly basis.

denied. On September 8, 1993, the IRS issued "Notice[s] Of Intent To Levy ..." to Plaintiff, advising of its intent to enforce collection of the balance of the assessments if they were not paid by October 6, 1993.

On September 17, 1993, Plaintiff filed the instant action, seeking a refund of the $17,-815.36 in federal employment, unemployment, and withholding taxes and penalties which it had paid under protest, and an injunction preventing the IRS from collecting the balance of the subject assessments. In addition, Plaintiff seeks attorneys fees, costs, and interest on the amounts paid to the IRS under protest. Defendant filed a counterclaim for $177,742.94, which it asserts is the total amount of FICA, withholding, and FUTA taxes due for the subject period (as of the date the counterclaim was filed), along with penalties, interest, and statutory additions.

Plaintiff asserts that its drivers were not its employees, but rather independent contractors, for which the above tax liability is not proper. Further, Plaintiff argues that even if the drivers were determined to be its common law employees, that it is entitled to relief pursuant to § 530 of the Internal Revenue Act of 1978.

Defendant moved for partial summary judgment pursuant to Fed.Rule Civ.P. 56 with respect to Plaintiff's requested relief concerning the applicability of § 530. Defendant requests the Court to determine that Plaintiff is not entitled to relief pursuant to § 530 of the Revenue Act of 1978 with respect to drivers that made $600 or more in one year should those drivers be determined to be Plaintiff's employees (doc. # 19).

Plaintiff responded in opposition to Defendant's Motion for Partial Summary Judgment, and contemporaneously filed its Motion for Summary Judgment (doc. # 28). Plaintiff asserts that it is entitled to summary judgment because the drivers were not its employees; that even if the drivers are considered to be its employees, it is not an "employer" for tax purposes; that the moneys received by the drivers from third party passengers were not "wages"; that it was precluded from withholding and paying the subject taxes because of the nature of its operations; and that, in any event, it is entitled to relief pursuant to § 530.

After consideration of the parties' submissions, the magistrate judge concluded that "Based upon the pleadings and evidence, ... the undersigned finds overwhelming evidence of plaintiff's good faith reliance on the independent contractor status of its drivers. [P]laintiff is entitled, at a minimum, to § 530 relief from the retroactive assessments in dispute." The magistrate judge further found that, "Applied to the facts of this case, the plaintiff's fare splitting arrangement with the drivers would not constitute 'payments' which required the filing of informational returns." (Form 1099). Accordingly, the magistrate judge recommended that Defendant's Motion for Partial Summary Judgment be denied; that Plaintiff's Motion for Summary Judgment be granted; that the $17,815.36 in assessments which Plaintiff paid to the IRS under protest be refunded, together with interest as provided by law; that Defendant be enjoined from enforcing collection of the amounts it assessed as stated in its "Notice[s] Of Intent To Levy ...." dated September 8, 1993; and that Plaintiff be awarded reasonable attorney's fees and costs in an amount to be determined (doc. # 35). Defendant's objections to the recommendation of the magistrate judge are before the Court.

## STANDARD OF REVIEW

The Federal Magistrates Act provides that a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636. The parties were notified that the failure to file objections to the magistrate judge's Memorandum and Recommendation with the district court would constitute a waiver of the right to *de novo* review by the district court, *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982), and would preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985); *United States v. Schronce,* 727 F.2d

91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

■ "The statute [28 U.S.C. § 636(b)(1)(C) ] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983); *Keeler v. Pea,* 782 F.Supp. 42, 43 (D.S.C.1992). *De novo* review is not required or necessary when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). A litigant who objects only in vague or general terms to the magistrate judge's recommendation, thereby preventing the district court from focusing on specific issues for review, renders the initial reference to the magistrate judge useless and frustrating to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 (6th Cir.1991); *Keeler v. Pea,* 782 F.Supp. at 43. Such an objection does not constitute an "objection" under 28 U.S.C. § 636(b)(1). *Mercado v. Perez Vega,* 853 F.Supp. 42, 44 (D.Puerto Rico 1993); *Keeler v. Pea,* 782 F.Supp. at 43. Additionally, when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with. *Orpiano v. Johnson,* 687 F.2d at 47, citing *Braxton v. Estelle,* 641 F.2d 392 (5th Cir.1981).

■ In any event, the district judge retains responsibility for the final determination and outcome of the case. *Wallace v. Housing Authority of the City of Columbia,* 791 F.Supp. 137, 138 (D.S.C.1992). Accordingly, the undersigned will conduct a careful review of the entirety of the magistrate judge's recommendation, and a *de novo* review of the portions of the recommendation to which specific objections have been filed.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.;Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* Fed.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

■ When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356; *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. The mere possibility of a factual dispute is not enough. Where the defendant demonstrates after a reasonable period of discovery that the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his case, summary judgment should be granted. *Celotex,* 477 U.S. at 317, 106 S.Ct.at 2548.

In an opinion characterizing the "genuine issue for trial" standard, Judge Wilkinson (now Chief Judge) wrote for the Fourth Circuit Court of Appeals:

> Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), quoted in *Catawba Indian Tribe v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir.1992).

## OBJECTIONS BY DEFENDANT

█ Defendant raised the following specific objections to the magistrate judge's recommendation: 1) that the Magistrate Judge's factual determination that the Plaintiff did not make "payments" to its drivers is erroneous; 2) that the Magistrate Judge's legal definition of "payment" was too narrow; 3) that the Magistrate Judge erroneously found that the parties were engaged in a joint venture; and 4) that the injunction against Defendant from the collection of assessments and the award of attorneys fees and costs was not supported by findings. The Court will conduct a *de novo* review of these objections. Defendant further stated that "The United States also objects to all of the Magistrate's recommendations." The later statement is construed as a general objection, of which specific review is not required.

### *Applicable Law*

In 1978, Congress passed Section 530 of the Revenue Act of 1978 which "functions basically as a defense against liability determined by the Internal Revenue Service for misclassification of workers as 'independent contractors' instead of 'employees.'" *In re Rasbury*, 130 B.R. 990, 1003 (Bankr.N.D.Ala. 1991), *aff'd*, 141 B.R. 752 (N.D.Ala.1992). This section eliminates, under certain circumstances, a taxpayer's past liability for employment taxes where the taxpayer acted in good faith in treating the workers as independent contractors.

Section 530(a) provides that:

(a) Termination of certain employment tax liability.—

(1) In general. If

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, *all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,* then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee *unless the taxpayer had no reasonable basis for not treating such individual as an employee.*

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1). *For purposes of paragraph (1), a taxpayer shall be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual was in reasonable reliance on any of the following:*

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) *long-standing recognized practice of a significant segment of the industry in which such individual was engaged.*

Section 530 of the Revenue Act of 1978 (as amended) (codified as amended at 26 U.S.C. § 3401 nt. (1993) (underlining added)).

Section 530(a) was enacted by Congress "in reaction to the perceived inconsistent and arbitrary action of the Internal Revenue Service in reclassifying independent contractors as employees." *Apollo Drywall, Inc. v.*

*United States,* 71 A.F.T.R.2d (RIA) 1689 (D.C.Mich.1993). Section 530 has been described as "a curative piece of legislation of a remedial nature based on a standard of good faith reliance intended to provide interim relief for taxpayers involved in employment tax status controversies with the Internal Revenue Service." *Queensgate Dental Family Practice, Inc. v. United States,* 68 A.T.F.R.2d (RIA) 5679 (D.C.Pa.1991) In enacting this provision, "Congress intended the section to serve as a safe haven, sheltering employers who had acted in good faith in treating workers as independent contractors." *Id.*

■ Irrespective of whether a worker is in fact an employee or an independent contractor, § 530 protects taxpayers from subjective application by the IRS of the twenty common law factors applicable to determining the employer-employee relationship. *Queensgate Dental Family Practice, Inc.,* 68 A.F.T.R.2d (RIA) 5679 (D.C.Pa.1991). Indeed, § 530 "was designed explicitly to eliminate the need for courts to engage in the balancing of complex factual issues in determining whether an individual is an independent contractor or an employee under common law." *Id.,* (emphasis added); *see also Donovan v. Tastee Freez, Inc.,* 520 F.Supp. 899, 903 (D.C.Puerto Rico 1981).

## DISCUSSION

The facts surrounding the collection and disbursement of fares are not disputed. As found by the magistrate judge, the facts are as follows: "With regard to the fare splitting arrangement, plaintiff's owner, dispatcher, and several of the subject drivers gave deposition testimony that a minority of the cab riders paid in cash; that a majority of the riders' trips were paid for pursuant to contracts between the plaintiff and various business or governmental entities; that the drivers collected the money from the cash-paying riders; that plaintiff gave the drivers 'credit' for any contract riders whom they transported; that the drivers 'settled up' with the

dispatcher by giving him 50% of the money collected from the cash-paying riders when such amounts exceeded the amounts due the drivers for the contract riders which they had transported; that when the amounts due the drivers for the contract riders exceeded the amount of cash which the drivers had collected, the dispatcher gave the drivers the difference in cash; that the drivers determined when they would 'settle-up'; that the drivers split the cost of fuel with plaintiff on a 50/50 basis; that the fuel arrangement typically involved the drivers subtracting the plaintiff's 50% contribution from the amount given to the dispatcher when drivers 'settled-up'; and that the plaintiff never physically handled the drivers' portion of the cash collected from the cash-paying riders." (doc. # 35, pages 9–10).

### Defendant's Specific Objections

Defendant's first objection contends that the Magistrate Judge's factual determination that the Plaintiff did not make "payments" to its drivers is erroneous. Defendant asserts that whether Plaintiff made "payments" to its drivers is determinative of the applicability of § 530 relief. If Plaintiff is found to have made "payments" to its drivers, then Plaintiff was required to file Forms 1099, information returns, for its drivers, pursuant to 26 U.S.C. § 6041(a).[3] It is undisputed that Plaintiff did not file 1099 returns. Defendant argues that Plaintiff has failed to satisfy a prerequisite to § 530 relief, *i.e.,* that "all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee."

The basis of Defendant's objection is that, contrary to the finding of the magistrate judge, Plaintiff *did* make payment to its drivers, that Plaintiff failed to file the "required" 1099 return, and, therefore, Plaintiff is not entitled to § 530 relief. Alternatively, Defendant argues that the payment question is a disputed question of fact which, at the

---

**3.** In general, a Form 1099, reporting the name and address of the recipient and the amount paid, must be filed by all persons engaged in a trade or business who make "payments" to an-

other person of $600.00 or more during a calendar year for services rendered by that person. *See* 26 U.S.C. § 6041(a) (1992).

summary judgment stage, must be resolved in favor of the non-movant, the Defendant.

Applying case authority to the facts as stated above, the magistrate judge analyzed the payment question as follows:

> Faced with a substantially similar question in *Manchester Music Company, Inc. v. United States,* 733 F.Supp. 473, 479, (D.N.H.1990), the Court noted that this question could be answered by using one of two approaches. Under one of the approaches, a court could "focus on the terms of the legal definition of 'payment' and determine whether plaintiff's actions fall within its narrow contours." In *Manchester Music Company, Inc.,* however, the Court took its definition for "payment" from Internal Revenue Code Regulation 1.6041(f),[4] which provides that "a payment is deemed made when control over the amount at issue is vested in the payee." *Id.* at 482. Using this approach, a "payment" is not considered to have been made unless and until the moneys are first "reduced to the taxpayer's possession." *Id.* That is, "a payment occurs with the transfer of possession, dominion, or control over money or its equivalent from a person who up to that point had been exercising such prerogatives over the same to another who is due the funds." *Id.*
>
> In light of such an arrangement, it cannot be concluded with the requisite degree of certainty that plaintiff made "payments" to the drivers which required the filing of 1099 informational returns. Indeed, plaintiff never had actual title to any more than 50% of the amounts which it collected on behalf of the drivers, or of which the drivers collected on behalf of the plaintiff.

(doc. # 35, pages 8–9).

Chief Magistrate Judge Horn concluded, "Applied to the facts of this case, the plaintiff's fare splitting arrangement with the drivers would not constitute 'payments' which required the filing of informational returns."

Defendant argues that the magistrate judge "ignored three major pieces of evidence" when deciding the payment issue: 1) entries on three of Plaintiff's corporate tax returns; 2) the Acknowledgment of Independent Contractor Agreement; and, 3) an agency theory as applied to the receipt of money by the drivers from the fare-paying public.

■ The tax years at issue in the instant case are the years 1988 through 1991. Plaintiff's corporate returns for taxable years ending June 30 of 1988, 1989, and 1990, reported the estimated total fares collected by the drivers as gross receipts to Plaintiff, and then 50% of the amount was deducted as attributable to income of the drivers. Plaintiff's tax preparer averred that he prepared the returns without a correct understanding of Plaintiff's method of operation, *i.e.,* that Plaintiff never had custody or control over the driver's portion of the fares. On the June 30, 1991 return, Plaintiff's accountant did not report the drivers' 50% share of the fares as gross receipts, correctly reporting only the portion of the fares belonging to Plaintiff. Plaintiff also filed amended returns for the years ending June 30 of 1988, 1989, and 1990, which did not include the drivers' portion of the fares as gross receipts of the corporation (doc. # 29, Ex. 13, 14, 15, 16). Defendant's argument does not address the significance of the amended returns, the affidavit of the tax preparer on this issue, or the 1991 return. All four returns effected the same tax result for Plaintiff: the drivers' portion was backed out either by deduction from gross receipts (tax years 1988 through 1990), or exclusion from gross receipts (tax year 1991). Defendant's objection is without factual or legal merit. See, *Plimpton Tool Company v. Comm'r,* 31 T.C.M. (C.C.H.) 612 (T.C.1972) (Corporate tax return included commissions of owner in gross sales commissions of corporation; court rejected IRS position that entry was conclusive as to the issue of income and held that mere entry of line items on a return is not determinative and taxpayer could not be estopped from showing facts relative to the entry).

■ Defendant argues that the typed form entitled "Acknowledgment of Independent Contractor Agreement" which was used by

---

4. As pointed out by the Court, § 6041(a) does not define "payment."

Plaintiff and its drivers is conclusive evidence that Plaintiff made payment to its drivers. The form states, in relevant part, "In consideration of the foregoing, the Company agrees to pay the undersigned payment as follows: (Describe amount and method of payment)." The handwritten phrase "50/50 Fares" was filled in. The "50/50 Fares" language is the material language on the payment issue, not the fact that the word "payment" appears on the form. It is clear from review of case authority cited by the parties that the appropriate analysis takes into account more than the mere language on a form.[5] Defendant's objection is not persuasive and does not raise a question of material fact.

■ As further evidence in support of a finding that Plaintiff made "payments" to its drivers, Defendant contends that Plaintiff is a principal as to its drivers, who are its agents. Thus, all money collected by the drivers is deemed to flow through Plaintiff. (doc. 36, page 4). Defendant has stated a legal conclusion as if it were an established fact.[6] As noted by Plaintiff in its opposition to Defendant's motion for partial summary judgment, Defendant has presented no facts, case law, or legislative history of § 530 in support of its assertion that the drivers were acting as Plaintiff's agents when they collected fares from the public. This objection is without merit.

■ The court finds, upon *de novo* review, that the evidence cited by Defendant does not undermine the decision of the magistrate judge holding that Plaintiff did not make "payments" to its drivers. Furthermore, the consideration of this evidence does not create a question of material fact regarding the payment issue which would preclude entry of summary judgment in favor of Plaintiff.

Secondly, Defendant objects that the Magistrate Judge's legal definition of "payment" was too narrow. Defendant argues that the magistrate judge erred by relying upon the definition of payment as set forth in *Manchester Music*. In that case, the court was called upon to determine whether the IRS was correct when it decided to assess penalties against the plaintiff for failing to file information returns (Forms 1099) and for disregarding intentionally the information return filing requirements. As in the instant case, the determinative issue there was whether Manchester Music made "payments" to the proprietors which triggered the 1099 filing requirement. Manchester Music divided the revenues from the machines with the proprietors of establishments where it had placed coin operated video games, pinball machines, and juke boxes. The plaintiff and the proprietors had contractually agreed to divide equally the revenues (profits and losses) from the machines, and any expenses were allocated evenly between the parties. Plaintiff provided the machines in exchange for the proprietors' agreement to use exclusively plaintiff's machines.

The court reasoned that the issue could be decided by either focusing on the legal definition of "payment," or by determining whether the proceeds originally belonged to plaintiff in their entirety, such that the proceeds constituted income to the plaintiff. The court found that only the half of the proceeds to which the plaintiff had a right could be considered income to him, and, therefore, the transfer of the other half to the proprietors cannot constitute a "payment" to the proprietors. Discussing the legal definition of "payment" under Internal Revenue Code Regulation 1.6041(f), the court determined that a "payment" is not considered to have

---

5. Lincoln said: "How many legs does a dog have if you call his tail a leg? Answer: Four, because calling a tail a leg doesn't make it one."

6. Defendant states that for purposes of both summary judgment motions, "The principal/agent relationship may be assumed." The Court disagrees. The "true" status of Plaintiff's drivers need not be determined prior to resolution of the applicability of § 530. *Queensgate Dental Family Practice, Inc.*, 68 A.F.T.R.2d (RIA) 5679 (D.C.Pa. 1991). Indeed, § 530 "was designed explicitly to eliminate the need for courts to engage in the balancing of complex factual issues in determining whether an individual is an independent contractor or an employee under common law." To find that a principal/agency relationship existed between Plaintiff and its drivers as the basis for determining whether "payments" were made, particularly if this finding is based upon an assumption, would be contrary to the purpose of § 530 and would destroy Plaintiff's protection from "subjective classifications by the IRS".

been made unless and until the moneys are first "reduced to the taxpayer's possession." That is to say, "... a payment occurs with the transfer of possession, dominion, or control over money or its equivalent from a person who up to that point had been exercising such prerogatives over the same to another who is due the funds." *Manchester Music Co., Inc. v. United States,* 733 F.Supp. 473, 482 (D.N.H.1990). The *Manchester Music* court found that, based upon the contractual agreement between plaintiff and the proprietors, as well as the actual method of division of the proceeds, neither party exercised dominion and control over the proceeds until the moneys were divided, such that no "payment" occurred.

Defendant disagrees with the *Manchester Music* court's analysis of Internal Revenue Code Regulation 1.6041(f), contending that the definition · of payment utilized by the court, and relied upon by Chief Magistrate Judge Horn, is flawed with inconsistent reasoning. Defendant does not support its position with case authority. Further, Defendant's analysis is based upon its presumption that the drivers were acting as agents of Plaintiff when they collected fares, leading to the conclusion that Plaintiff had legal possession of all fares at all times. This position has been discussed and rejected earlier in this opinion (page 478).

Like the *Manchester Music* court, this Court finds that Plaintiff did not exercise control over all the proceeds such that the proceeds could be considered income to Plaintiff, or that the division of proceeds between Plaintiff and its drivers constituted a "payment" in the legal sense. *Manchester Music* is valid authority and its facts are closely analogous to those of the instant case. This reasoning is also consistent with the Fourth Circuit's determination in *Magruder v. Yellow Cab Co.,* 141 F.2d 324 (4th Cir.1944) (money received by drivers from fare-paying public does not constitute "wages" paid by

Yellow Cab). Accordingly, the magistrate judge's reliance on *Manchester Music* was proper, and Defendant's objections are overruled.

Defendant contends that the Magistrate Judge erroneously found that the parties were engaged in a joint venture. Defendant notes that the magistrate judge found that "plaintiff never had actual title to any more than 50% of the amounts which it collected on behalf of the drivers, or of which the drivers collected on behalf of the plaintiff." (doc. #35 page 9). Defendant characterizes this statement as "describ[ing] a joint venture," and based upon this characterization, objects to the magistrate judge's finding "that Plaintiff and its drivers were engaged in a joint venture."

It is clear from a careful reading of the magistrate judge's recommendation that he did not find that the parties were engaged in a joint venture. In fact, the magistrate judge noted that it is not necessary to determine the "true" status of an individual vis a vis a relating entity prior to granting § 530 relief (doc. #35 page 8). Defendant has objected to a finding that was not made. The Court finds that Defendant's objection is without merit.

In sum, the Court finds that Plaintiff has established that it has met all of the requirements to be entitled to § 530 relief from liability for past employment taxes.[7] Plaintiff did not treat any of its drivers as an employee for any time during the relevant period; Plaintiff filed all required tax returns consistent with its treatment of its drivers as non-employees; Plaintiff was not required to file Forms 1099 because Plaintiff did not make "payment" to its drivers; and Plaintiff had a reasonable basis for not treating its drivers as employees, relying upon industry practice (see doc. #29, Ex. 6, Huntley Aff., survey results of fourteen cab companies), the Acknowledgment of Independent Contractor Agreement, and advice from its ac-

---

7. As noted by the magistrate judge, Defendant chose to focus its arguments on Plaintiff's failure to file information returns, "implicitly conceding that Plaintiff has met the other requirements of § 530 relief." Defendant responds that the other areas were not challenged for purposes of Plaintiff's Motion for Summary Judgment "since Plaintiff's failure to file the Form 1099 is fatal to Section 530 relief." (doc. #38, page 2). Accordingly, the magistrate judge's findings regarding Plaintiff's good faith reliance on the independent contractor status of its drivers was subject to a careful, rather than *de novo* review.

countants, attorney, the North Carolina Employment Security Commission, and others.

 Defendant submits by way of objection that the injunction against Defendant from the collection of assessments and the award of attorneys fees and costs was not supported by findings. Suit may be maintained to enjoin collection of taxes only under special or extraordinary circumstances. *Miller v. Standard Nut Margarine Co. of Florida,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). This Court may enjoin the IRS from taking collection activity only if 1) under no circumstances could the government prevail, and 2) plaintiff would suffer irreparable injury for which there is no adequate remedy at law. 26 U.S.C. § 7421; *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Upon the filing of this Memorandum Opinion, the Court will have granted Plaintiff's Motion for Summary Judgment, rendering Defendant's claims unenforceable. Therefore, the Court finds that injunctive relief prohibiting collection activities by Defendant is unnecessary.

 Administrative costs and litigation costs are available to a prevailing plaintiff in an administrative or court proceeding brought against the United States in connection with the determination, collection or refund of any tax, interest, or penalty under Title 26, subject to certain limitations and findings. 26 U.S.C. § 7430, *et seq.* Plaintiff has the burden of demonstrating, among other things, that it was the prevailing party, that Defendant's position was not substantially justified, and that the requested sum is reasonable and adequately supported with appropriate documentation. *Id.* Plaintiff must satisfy its burden in this regard, and Defendant must be given an opportunity to rebut same. *See Bowles v. U.S.,* 947 F.2d 91 (4th Cir.1991); *In re Rasbury,* 24 F.3d 159 (11th Cir.1994).

Defendant's objection to the magistrate judge's recommendations that an injunction be entered and that Plaintiff is entitled to an award of attorneys' fees is well-taken. Accordingly, this recommendation is not accepted. The parties will be given an opportunity to present fully their respective positions on these issues in a manner consistent with the Court's Memorandum Opinion and Order.

## CONCLUSION

The Court finds that the magistrate judge's findings of fact and conclusions of law are accurate and supported by the applicable case authority, except as noted above. The Court finds that Plaintiff has demonstrated that there are no questions of material fact precluding the entry of summary judgment in its favor and that, as a matter of law, it is entitled to the protection of the "safe harbor" provisions of Section 530. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 26 U.S.C. Section 530(a)(1)(A)(B); (2)(C); Fed.Rule Civ.P. 56. Defendant has failed to point to sufficient evidence which would allow a reasonable jury to find in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ORDER

IT IS, THEREFORE, ORDERED that Plaintiff's Motion for Summary Judgment (doc. # 28) is **GRANTED;**

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (doc. # 19) is **DENIED;**

IT IS FURTHER ORDERED that Plaintiff's Motion To Strike Response of Defendant to Plaintiff's Supplemental Brief of Authorities (# 45) is **DENIED.** The appropriateness of the legal positions taken by Defendant in its filings with the Court will be addressed in ruling upon Plaintiff's request for an award of costs and expenses.

The parties are **FURTHER ORDERED** to brief fully Plaintiff's request for an award of costs and expenses in accordance with the standards set forth in 26 U.S.C. § 7430, *et seq.* The Court hereby refers Plaintiff's request for an award of fees and costs to Chief Magistrate Judge Horn for recommendation to the Court. *See In re Brickell,* 922 F.2d 696 (11th Cir.1991). Upon final adjudication of the fees and costs issue by the Court,

judgment will be entered in favor of Plaintiff based upon its entitlement to § 530 relief.[8]

---

**8.** "An order granting or denying (in whole or in part) an award for reasonable litigation or administrative costs under subsection (a) in a court proceeding, may be incorporated as a part of the decision or judgment in the court proceeding and shall be subject to appeal in the same manner as the decision or judgment." 26 U.S.C. § 7430(f)(1).