Rebekah HOMESLEY and Michael Homesley Plaintiffs,

v.

FREIGHTLINER CORPORATION and Robert "Butch" Yarbrough, Defendants.

No. 3:98CV134–V.

United States District Court, W.D. North Carolina, Charlotte Division.

Nov. 8, 2000.

George Daly, Charlotte, NC, for Rebekah Homesley, Michael Homesley, plaintiffs.

Raboteau T. Wilder, Jr., Deanna Ruddock Lindquist, Kilpatrick Stockton LLP, Charlotte, NC, James Carpenter, for Freightliner Corporation, Robert Yarborough aka Butch, defendants.

### MEMORANDUM AND ORDER

VOORHEES, District Judge.

**THIS MATTER** is before the Court on "Defendant Freightliner Corporation's 'Motion for Summary Judgment' and 'Memorandum in Support of its Motion for Summary Judgment'", both filed June 4, 1999. "Plaintiff's Response to Motion for Summary Judgment by Defendant Freightliner" was filed on June 28, 1999. "Defendant Freightliner Corporation's Reply Memorandum" was filed on July 12, 1999.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of designation, this Court referred the aforesaid motion to United States Magistrate Judge Carl Horn for recommended disposition. In an opinion filed on July 15, 1999, Magistrate Judge Horn recommended that Defendant Freightliner's (hereinafter "Defendant") "Motion for Summary Judgment" be granted in part and denied in part. Defendant filed Objections to the "Memorandum & Recommendations" of the Magistrate Judge on July 29, 1999. Pursuant to the Order issued by this Court on January 13, 1999, Defendant' objections are deemed to be timely and the specific objections raised by Defendant are considered herein.

### I. STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983); *Keeler v. Pea,* 782 F.Supp. 42, 43 (D.S.C.1992). *De novo* review is not required by the statute when an objecting party makes only general or conclusory objections that do not direct the court to the specific error in the magistrate judge's recommendations. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Camby,* 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a

careful review of Magistrate Judge Horn's "Memorandum & Recommendation" as well as a *de novo* review of those issues specifically raised in Defendant's objections.

## II. FACTUAL & PROCEDURAL BACKGROUND

The Defendant made specific objections to the findings of fact contained in the Magistrate Judge's "Memorandum & Recommendation". Consequently, the Court has conducted a *de novo* review of the factual and procedural background in this matter. Defendant does not object to the facts set forth in the "Memorandum & Recommendation", but instead objects to the Magistrate Judge's failure to include "numerous undisputed facts ...." (Def. Objections at 2–3.) Accordingly, the Court adopts the factual findings made by the Magistrate Judge on pages one through six of his opinion filed on July 15, 1999. In addition, after considering the record in the light most favorable to the Plaintiff, the Court supplements the facts as follows.

### A. Plaintiff's Employment with Freightliner

Plaintiff was supervised by Jerry Lang. Robert "Butch" Yarbrough was Plaintiff's "group leader" in the Welding Department.

### B. Plaintiff's Complaint and Freightliner's Prompt, Remedial Action

Plaintiff testified that she was sexually harassed during the entire time that she worked with Yarbrough, but that Yarbrough did not touch her in a sexually-harassing manner until 1997.

On the Monday following Plaintiff's complaint to Mike Tolbert, Freightliner's Personnel Manager, Plaintiff thanked Tolbert for not reporting the incident because she was scared of what might happen to her job.

In May or June, 1997, Plaintiff went to Lang to complain about Yarbrough's re-newed harassment, but "chickened out" and complained instead about her work assignments. After urging by her co-employee Rita Chitwood, Plaintiff reported Yarbrough's harassing behavior to Lang in July, 1997.

### C. Plaintiff's EEOC Charge

The EEOC dismissed Plaintiff's complaint in part because it found that Defendant took the most appropriate disciplinary action as stipulated by its harassment policy.

## III. DISCUSSION OF LAW

Applying the careful standard of review to those portions of the Magistrate Judge's recommendation that were not specifically objected to, the Court finds that his findings of fact are supported by the record and his conclusions of law are consistent with current case law. The Court must now consider the specific objections raised by the Defendant.

### A. Defendant's Claim that Yarbrough was not Plaintiff's Supervisor for Purposes of Title VII

The Supreme Court recently articulated standards for imputing liability to employers in sexual harassment cases. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The Court distinguished between two types of sexual harassment cases: those in which the harassment is coupled a with "tangible employment action", and those in which no "tangible employment action" is taken. *See Ellerth*, at 760–62, 118 S.Ct. 2257. In the latter types of cases, into which Plaintiff's case falls, employer liability depends on whether the alleged harasser is "aided by the agency relationship." *See id.* at 2269. Co-worker harassment is generally not "aided by the agency relationship", and an employer is liable "only for [its] own negligence in failing, after actual or constructive notice,

to take prompt and adequate action to stop it." *Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir.1999) (*citing Ellerth*, 524 U.S. at 758, 118 S.Ct. 2257). In contrast, harassment by one "having some measure of supervisory authority over the victim" may be "aided by the agency relationship." *Id*. However, even though "aided by the agency relationship", employer liability for supervisor harassment is not absolute. *See id*. Instead, an employer may raise the affirmative defense that it had (1) " 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (2) the victim had 'unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Id*. (*quoting Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275).

■ In considering whether a material issue of fact exists regarding Defendant's liability for Yarbrough's harassment of Plaintiff, the Court first must determine if Yarbrough was "aided by the agency relationship." This, in turn, depends upon whether Yarbrough exercised "some measure of supervisory authority" over Plaintiff. If Yarbrough exercised no supervisory authority over Plaintiff, the Court must employ the negligence test in determining whether a material issue of fact exists regarding Defendant's liability. However, if Yarbrough exercised supervisor authority over Plaintiff, such that his harassment was "aided by the agency relationship", Defendant's liability is analyzed under the *Ellerth/Faragher* affirmative defense. The Magistrate Judge concluded that a material issue of fact existed as to whether Yarbrough exercised supervisory authority over Plaintiff, and thus was unable to determine which liability test to use. Defendant specifically objects to this conclusion, arguing that Yarbrough was not Plaintiff's supervisor and that therefore the *Ellerth/Faragher* standard is inapplicable.

In *Mikels*, the Fourth Circuit provided important guidance on the question of whether harassment by one having some measure of supervisory authority is aided by the agency relation. *Mikels*, 183 F.3d at 333–34. According to the court, a key factor is the harasser's degree of control over the victim's conditions of employment.

> The determinant is whether as a practical matter his employment relation to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not. . . . The most powerful indicator of such a threat-induced vulnerability deriving from the supervisor's agency relation lies in his authority, though not exercised in the particular situation, to take tangible employment actions against the victim, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Id*. at 333 (*quoting Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257). Yarbrough's employment relationship with Plaintiff lacked the "most powerful indicators of . . . threat-induced vulnerability . . . ." As "group leader", Yarbrough had no authority to hire, fire, or discipline any of the other welders. Yarbrough did report to his supervisor regarding the performance of group members. However, there is no evidence in the record that he had the power to promote or fail to promote other welders. In addition, while Yarbrough assigned the welders in his group to perform various welding jobs, depending on the plant's daily needs, there is no evidence that he could reassign welders to tasks with "significantly different responsibilities."[1] Likewise,

---

1. Plaintiff testified that Yarbrough gave her unfavorable welding assignments, such as welding batteries or bumpers, more frequently than he did other welders. However,

"reassignment with significantly different job responsibilities" does not include reassignment to a more inconvenient job. *See Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257 (*citing Harl-*

while Yarbrough scheduled the use of vacation and sick leave for welders in his group, he could not "caus[e] a significant change in benefits."

Even though Yarbrough's harassment was not aided by the "most powerful indicators of ... threat-induced vulnerability ...", the Fourth Circuit has held that "lesser forms" of authority may be sufficient to aid supervisor harassment. *Mikels*, 183 F.3d at 333. According to the court, the victim's response may be determinative of whether a supervisor's lesser forms of authority have aided his/her harassment. *See id.*

> In such less clear circumstances, the victim's response in context maybe highly probative on the issue whether any agency authority possessed by the harasser has actually aided his conduct by increasing her sense of vulnerability and defenselessness.... [W]here the level of authority had by a harasser over a victim—hence her special vulnerability to his harassment—is ambiguous, the tip-off may well be in her response to it. Does she feel free to "walk away and tell the offender where to go," or does she suffer the insufferable longer than she otherwise might?

*Id.* at 333–34 (*quoting Faragher*, 524 U.S. at 803, 118 S.Ct. 2275). Yarbrough's level of authority over Plaintiff is ambiguous. As "group leader", Yarbrough was not Plaintiff's supervisor. He could not hire, fire, or discipline Plaintiff. However, Yarbrough did control welding assignments and the use of vacation and sick time. In addition, he reported on welders' performance to his supervisor. Because Yarbrough's employment relationship with Plaintiff falls into the "less clear circumstances" discussed by the Fourth Circuit in *Mikels*, the Court looks to Plaintiff's response to Yarbrough's harassment to determine whether Yarbrough's harassment was "aided by the agency relationship."

Plaintiff testified that Yarbrough's harassing behavior continued throughout the time she worked with Yarbrough. According to Plaintiff, this harassment most frequently took the form of sexually-explicit comments and gestures. However, Plaintiff alleges that in early 1997, Yarbrough rubbed his hand over her breast under the pretense of removing dirt from her name tag. Plaintiff testified that when she confronted Yarbrough privately to complain about this behavior, he just laughed in response. When Yarbrough allegedly rubbed her breast again, Plaintiff reported Yarbrough to Personnel Manager Mike Tolbert. According to Plaintiff, at first she only was willing to speak hypothetically with Tolbert, and only reluctantly identified Yarbrough as her harasser. After Tolbert suggested that Plaintiff take the weekend to think about what she wanted to do, Plaintiff thanked Tolbert for not pursuing the matter because she feared what might happen to her job. When Yarbrough's offensive behavior resumed several weeks later, Plaintiff attempted to complain to her supervisor Jerry Lang but "chickened out." According to Plaintiff, she was able to complain to Lang only after her co-worker Rita Chitwood first complained about Yarbrough and urged Plaintiff to do the same. Viewing the facts in the light most favorable to the Plaintiff, Plaintiff's response to Yarbrough's harassment indicates that she did not feel free to "walk away and tell the offender where to go," and instead "suffer[ed] the insufferable longer than she otherwise might." Thus, Plaintiff's "response in context" suggests that Yarbrough's harassment may have been aided by the agency relationship.

The Court notes that Plaintiff's case is distinguishable from *Mikels*, in which the Fourth Circuit concluded that Mickels would have "no serious prospect" of proving that her harasser's conduct was aided by the agency relationship. *Mikels*, 183 F.3d at 334. First, the court found that the authority possessed by Mickels' haras-

ston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir.1994)).

ser over Mickels was at best minimal. *See id.* Both Mickels and her harasser were members of the City of Durham Police Department. *See id.* Mickels' harasser was a corporal, while Mickels was a private-level member of the same squad. *See id.* As her superior in rank, Mickels' harasser had "at most . . . the occasional authority to direct her operational conduct while on duty." *Id.* In contrast, Yarbrough controlled Plaintiff's work assignments and her use of vacation and sick time, and reported on her performance to his supervisor. Thus, Yarbrough's authority over Plaintiff clearly was more than "minimal."

Second, the Fourth Circuit concluded that Mickels' response to her harasser indicated that she was not subject to any special vulnerability or defenselessness deriving from her harasser's status as corporal. *See id.* Immediately following her harasser's attempt to grab and kiss her, Mickels rebuffed him in a profanity-laced outburst, rejected his immediately proffered apology, and filed a formal grievance against him the next day. *See id.* In sharp contrast, Plaintiff was extremely reluctant to report Yarbrough's harassing behavior to Yarbrough, to Personnel Manager Tolbert, or to her supervisor Lang, in part because she feared what might happen to her job. Thus, by her response, Plaintiff suggests that Yarbrough's harassment was aided by the agency relationship.

For the reasons outlined above, the Court finds that Plaintiff has put forth sufficient evidence to establish that a genuine issue of material fact exists regarding whether Yarbrough's harassment was aided by the agency relationship. Consequently, the Court concurs with the Magistrate Judge that it cannot be determined, on summary judgment, whether to apply the employer negligence test or the *Ellerth/Faragher* affirmative defense structure. In its objections, Defendant argues that Yarbrough merely was Plaintiff's coemployee and that summary judgment is appropriate under the employer negligence test. Alternatively, Defendant ar-

gues that summary judgment is appropriate under the *Ellerth/Faragher* standard. Because a material issue of fact exists regarding Yarbrough's supervisory status, this Court will consider summary judgment under both the negligence test for co-employee harassment and the *Ellerth/Faragher* standard for harassment that is aided by the agency relationship. Only if no material issue of fact exists under both tests is summary judgment appropriate.

### B. Defendant's Claim that It Took Prompt, Remedial Action After Plaintiff Complained

■ Co-worker harassment is generally not "aided by the agency relationship", and an employer is liable "only for [its] own negligence in failing, after actual or constructive notice, to take prompt and adequate action to stop it." *Mikels*, 183 F.3d at 332 (*citing Ellerth*, 524 U.S. at 758, 118 S.Ct. 2257). Defendant argues that no material issue of fact exists regarding whether its response to Plaintiff's complaints were prompt and adequate. When Plaintiff complained about Yarbrough to Tolbert, Tolbert testified that he in turn informed Buddy Kircus, plant manager. Thereafter, Yarbrough's behavior improved for several weeks, although it is unclear whether this improvement was a result of any warning given by Kircus to Yarbrough. However, the evidence is clear that the improvement was short-lived, as Plaintiff reports that Yarbrough's harassing behavior started up again several weeks later. When Plaintiff next reported Yarbrough's harassment to Lang, Defendant began an investigation which resulted in Yarbrough receiving a written warning. While Yarbrough's lewd comments and touching ended after receiving the warning, Plaintiff later complained of stalking-like behavior by Yarbrough. After this complaint, Yarbrough was moved to another area of the plant.

The Fourth Circuit has held that an employer's response to co-employee

harassment is adequate when the harassing behavior subsequently stops. *See Spicer v. Commonwealth of Va. Dep't of Corrections,* 66 F.3d 705, 710–11 (4th Cir.1995) ("[W]hen an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well"). According to Plaintiff, shortly after her complaints to Tolbert and Lang, Yarbrough harassing behavior resumed. Thus, Defendant's verbal and written reprimands did not end Yarbrough's harassing behavior. Consequently, the Court agrees with the Magistrate Judge that under the negligence test for co-employee harassment, there are material issues of fact precluding summary judgment.

### C. Defendant's Claim that It Prevails Under the Ellerth/Faragher Standard

The Court need not consider whether summary judgment is appropriate under the *Ellerth/Faragher* standard, as it already concluded that summary judgment is not appropriate under the negligence test. However, given the requirement that the Court conduct a *de novo* review of those portions of the magistrate's recommendations to which objection is made, the Court considers Defendant's argument that summary judgment is appropriate under the *Ellerth/Faragher* standard.

Even though "aided by the agency relationship", employer liability for supervisor harassment is not absolute. *See id.* Instead, an employer may raise the affirmative defense that it had (1) " 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (2) the victim had 'unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Mikels,* 183 F.3d at 332 (*quoting Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275).

The first prong of this two-pronged affirmative defense contains two elements. Thus, in order to award summary judgment for Defendant, there must be no genuine issues of material fact regarding Defendant's exercise of reasonable care to (a) prevent and (b) correct sexual harassment. According to the Fourth Circuit, "[e]vidence that [an employer] ha[s] disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment." *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 182 (4th Cir.1998) (*citing Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257, *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275, *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 72–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In addition, the Fourth Circuit has found an employer's corrective efforts reasonable where the corrective action was immediate, succeeded in stopping any further sexual harassment, and was satisfactory to the victim. *See Brown v. Perry,* 184 F.3d 388, 396–97 (4th Cir.1999). The Court cannot conclude that there is no genuine issue of material fact regarding the reasonableness of Defendant's corrective actions. While Defendant's response to Plaintiff's complaints may have been reasonable, it did not permanently end the harassment. After Petitioner's first two complaints, Yarbrough's harassing behavior briefly subsided before beginning again in earnest. Given the resumption of harassing behavior after Defendant received and responded to Plaintiff's complaints, the Court concurs with the Magistrate Judge that Defendant cannot establish the absence of a genuine issue of material fact as to its affirmative defense under *Ellerth* and *Faragher.*[2]

### IV. ORDER

Having conducted a *de novo* review of the points specifically objected to by Defendant in the Magistrate Judge's "Memo-

---

2. Because Defendant cannot establish as a matter of law that it exercised reasonable care to correct Yarbrough's sexually harass-

ing behavior, the Court need not consider the second prong of the *Ellerth/Faragher* affirmative defense.

randum & Recommendation" in this case, and a careful review of all other aspects of said recommendation, the Court grants in part and denies in part the Defendant's "Motion for Summary Judgment". The Court concurs with the findings of fact and conclusions of law specified in the Magistrate Judge's "Memorandum & Recommendation" filed on July 15, 1999, and hereby incorporates those findings and conclusions to the extent they are consistent with the findings included in this Order.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Summary Judgment" be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's Motion is **DENIED** regarding Plaintiff's Title VII Sexual Harassment Claim.

2. Defendant's Motion is **GRANTED** regarding Plaintiff's Assault and Battery Claim. This claim is **DISMISSED WITH PREJUDICE**.